## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                            :  Chapter 11
                                                  :
TUSCANY INTERNATIONAL HOLDINGS                    :  Case No. 14-10193 (_____)
(U.S.A.) LTD., et al.,                            :
                                                  :  Joint Administration Pending
                  Debtors.¹                       :
-------------------------------------------------------- x
```

## MOTION OF DEBTORS FOR AN ORDER (I) PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b)(9), 1107(a) AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF FOREIGN CLAIMS AND (II) PURSUANT TO FED. R. BANKR. P. 2002(m), 6003 AND 9007 WAIVING NOTICING REQUIREMENTS

The debtors and debtors in possession in the above-captioned cases (together, the

"**Debtors**") hereby move (the "**Motion**") for entry of interim and final orders, under Sections

105(a), 363(b), 503(b)(9), 1107(a) and 1108 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rules 2002, 6003, and 9007 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), and Rule 2002-1 of the Local Rules of Bankruptcy

Practice and Procedure of the United States Bankruptcy Court of the District of Delaware (the

"**Local Rules**") (i) authorizing, but not directing, the Debtors to pay certain prepetition

obligations owing to or for the benefit of (a) all employees of the Debtors located in Ecuador (the

"**Ecuador Employees**"), (b) all creditors located in Ecuador from which the Debtors obtain

goods, materials, equipment, and services and otherwise transact business, including, but not

limited to, suppliers, manufacturers, shippers, freight administrators, warehousemen, mechanics,

utility providers, insurance providers, taxing and other governmental authorities, and all creditors

---

¹       The Debtors in these cases are Tuscany International Holdings (U.S.A.) Ltd. and Tuscany International Drilling Inc.  The last four digits of Tuscany International Holdings (U.S.A.) Ltd.'s U.S. federal tax identification number are 8192.  The last four digits of Tuscany International Drilling Inc.'s Canadian tax identification number are 4278.  The address for the Debtors is 1950, 140 – 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3.

utilized in connection with the compensation or provision of benefits to the Ecuador Employees (collectively, the "**Ecuador Creditors**" and, together with the Ecuador Employees, the "**Ecuador Parties**"), and (c) all creditors located in Colombia, Brazil, or any other South American country who may have prepetition claims against the Debtors (the "**Additional South America Parties**" and, together with the Ecuador Parties, the "**Foreign Parties**"), (ii) confirming the Debtors' right to continue to pay or otherwise honor obligations owing to or for the benefit of the Foreign Parties postpetition, in the ordinary course of business, and (iii) waiving the noticing requirements set forth in Bankruptcy Rules 2002 and 2015 and Local Rule 2002-1 with respect to the Foreign Parties (the "**Noticing Requirements**"). In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Deryck Helkaa, Chief Restructuring Officer of Tuscany International Drilling Inc., in Support of Chapter 11 Petitions and First Day Pleadings, filed with the Court concurrently herewith (the "**Helkaa Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.       This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 363(b), 503(b)(9), 1107(a) and 1108. Such relief is warranted under Bankruptcy Rules 2002(m), 6003 and 9007.

## BACKGROUND

2.     On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Helkaa Declaration, which is fully incorporated herein by reference.

3.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

## RELIEF REQUESTED

4.     The Debtors seek entry of interim and final orders (a) authorizing them, in their sole discretion, to pay the prepetition claims of the Foreign Parties (the "**Foreign Claims**"), as more particularly described below, (b) confirming their right to continue to pay or otherwise honor obligations owing to or for the benefit of the Foreign Parties postpetition, in the ordinary course of business, and (c) waiving the Noticing Requirements with respect to the Foreign Parties.  The Debtors submit that such relief is warranted because (a) the practical jurisdiction of the Court does not extend to the Foreign Parties, making the protections afforded to the Debtors under the Bankruptcy Code not readily enforceable against the Foreign Parties and (b) the payment of the Foreign Claims and the waiver of the Noticing Requirements is necessary to

protect their assets and operations located in Ecuador and other South American countries,[2]

preserve their foreign relationships, and ultimately achieve their chapter 11 objectives.

5.    The Debtors further request that the Court authorize and direct the

Debtors' banks and financial institutions to receive, process, honor and pay all prepetition and

postpetition checks and fund transfers on account of the Foreign Claims, and authorize the

Debtors' banks and financial institutions to rely on the representations of the Debtors as to which

checks and fund transfers should be honored and paid in respect of the Foreign Claims, provided

that sufficient funds are on deposit in the applicable accounts to cover such payments.

## BASIS FOR RELIEF

6.    As described in the Helkaa Declaration, the Debtors derive all of their

revenue from their operations in Colombia, Brazil, and Ecuador.  The Colombian and Brazilian

operations are run by certain of the Debtors' non-debtor affiliates.  However, the Debtors'

Ecuadorian operations are operated by a branch office of Debtor Tuscany International Drilling

Inc. ("**TID**"), which branch office is headquartered in Quito, Ecuador (the "**Ecuador Branch**

**Office**").  The Ecuador Branch Office was included as a part of TID in order to obtain certain tax

benefits that resulted from such an organizational structure.  Although the Ecuador Branch

Office is structurally a part of TID, it generally functions as a separate and distinct entity from

TID.  Revenue received from customers of the Ecuador Branch Office is deposited into local

bank accounts reserved for the Ecuador Branch Office and is not typically comingled with other

funds in TID's main operating accounts.  Instead, the revenue generated by the Ecuador Branch

Office is used to fund its operational expenses.  Accordingly, in practice, the Ecuador Branch

---

[2]    Other than those assets and operations located in Ecuador, the Debtors' assets and operations in South
America are owned and managed, respectively, by certain of their non-debtor affiliates.

Office operates almost entirely independently of TID, and functions in a substantially similar manner to the non-debtor affiliates that manage the Debtors' operations in Colombia and Brazil.

7.      In the ordinary course of their businesses, the Debtors pay for goods, materials, equipment, and services obtained from, and engage in other business relationships with, numerous Ecuador Creditors in order to support their operations in Ecuador.  The Debtors also employ approximately 330 unionized Ecuador Employees at the Ecuador Branch Office. Unless the Ecuador Branch Office continues to have unfettered access to goods, materials, equipment, and services from, and uninterrupted business and employment relationships with, the Ecuador Parties, their ability to continue operations as a going concern will rapidly erode.

8.      The Debtors also have business relationships with a minimal number of Additional South America Parties located in Colombia, Brazil, and various other South American countries, each of whom may have a de minimis Foreign Claim against the Debtors.

9.      The Debtors believe that, failure to promptly pay the Foreign Claims would severely disrupt their access to the goods and services provided by the Foreign Parties. Additionally, in the case of the Ecuador Branch Office, should the Ecuador Parties even receive notice of the Chapter 11 Cases, the Debtors believe that many of them will be wary of continuing to do business with the Debtors, in part because of the material differences in Ecuadorian insolvency laws and their likely unfamiliarity with the chapter 11 reorganization process and the protections afforded to creditors thereunder.[3]  The Debtors further believe that providing notice of the Chapter 11 Cases to the Additional South America Parties could have a similar result in Colombia, Brazil, and other South American countries.

---

[3]      For example, the Ecuadorian insolvency regime is generally liquidation-oriented and rarely will a debtor reorganize under such laws.

10.    Accordingly, the Debtors believe that the relief requested herein is necessary in order to allow them to continue uninterrupted their operations in South America,[4] thereby avoiding the loss of significant revenue generated by the Ecuador Branch Office and the Debtors' non-debtor affiliates in Colombia and Brazil.

## A.    Payment of the Foreign Claims

11.    Paramount among the reasons for satisfying the Foreign Claims is the fact that the Foreign Parties are likely not subject to the jurisdiction of this Court. Accordingly, efforts by the Debtors to enforce the Bankruptcy Code against them will be expensive, time-consuming and, ultimately, futile. Further, after discussions with their local Ecuadorian counsel, the Debtors are concerned that because the Ecuador Creditors may feel that the Bankruptcy Code cannot be enforced against them, some of the Ecuador Creditors may (a) file lawsuits in foreign courts and obtain judgments against the Debtors, (b) exercise "self help" remedies and seize valuable assets that the Debtors hold abroad, or (c) interfere with valuable foreign relationships to secure payment on the Foreign Claims.

12.    Additionally, as noted above, Foreign Parties are often unfamiliar with the chapter 11 process, particularly in a country such as Ecuador, which does not have an insolvency regime comparable to that in the United States. As a result, absent prompt and full payment, the Ecuador Creditors are likely to refuse to provide the goods, materials, equipment, and services and to engage in other business relationships that are required by the Debtors during the pendency of these Chapter 11 Cases. Even if they do not take such drastic action, it is likely that the Ecuador Creditors will delay providing such goods, materials, equipment, and services,

---

[4]    As noted in footnote 2, other than with respect to Ecuador, the Debtors' operations in South America are managed by certain of their non-debtor affiliates.

thereby jeopardizing the Debtors' cash flow and exposing the Debtors' estates to significant and potentially irreparable economic harm.

13.    This unfamiliarity with the chapter 11 process would be even more pronounced among the Debtors' Ecuador Employees.  The Debtors employ 330 unionized workers in their Ecuador Branch Office.  Any interruption in the payment of wages or benefits to the Ecuador Employees would have a crippling effect on the Debtors' businesses.  Even the suggestion that these Ecuador Employees may not be paid could cause the Ecuador Employees to cease working for the Debtors or even retaliate against the Debtors' management or their facilities, causing severe harm to the Debtors' businesses.  Additionally, because all of the Ecuador Employees are party to collective bargaining agreements with the Debtors, the concerns of a single employee may quickly be shared with the entire workforce, causing panic among the Ecuador Employees.  As a result, absent prompt and full payment to the Ecuador Employees of their wages and benefits, it will likely be impossible for the Debtors to continue their operations in Ecuador and preserve the value of their business.

14.    For the same reasons stated above, the Debtors believe that payment of the Foreign Claims of the small number of Additional South America Parties is necessary to avoid potential harm to the Debtors' and their non-debtor affiliates' operations.

15.    Given the circumstances and practical realities, the Debtors maintain that paying the Foreign Claims is both necessary and essential to their ability to achieve their chapter 11 objectives and preserve value for their various constituencies.

**B.    Waiver of Noticing Requirements**

16.    The Debtors believe that providing notice of the Chapter 11 Cases to the Ecuador Parties would be catastrophic to their operations in Ecuador.  Most, if not all, of the Ecuador Creditors are small trade creditors who are likely unfamiliar with the formalities of any

bankruptcy proceeding, let alone a proceeding under U.S. bankruptcy law.  Even if the Debtors are given authority to pay them in full, should they receive notice of court proceedings in the United States, they could cease doing business with the Debtors.  The Ecuador Employees will be similarly apprehensive of the pending Chapter 11 Cases, and the Debtors fear that they will begin seeking alternative employment opportunities, leaving the Debtors with an insufficient workforce to maintain their operations in Ecuador.

   17. The Debtors also believe that providing notice of the Chapter 11 Cases to the few Additional South America Parties could cause the Additional South America Parties, who are likely as unfamiliar with chapter 11 as their Ecuadorian counterparts, to terminate their business with the Debtors.  Moreover, because certain of the Additional South America Parties are located in Colombia and Brazil, where the Debtors' non-debtor affiliates operate, the Debtors believe that providing them notice could cause them to incorrectly assume that the Debtors' non-debtor affiliates are also debtors in these Chapter 11 Cases.  This would  likely lead to widespread panic among not only the Additional South America Parties, but potentially other vendors and employees as well.

   18. Most importantly, because the Debtors seek to pay each of the Foreign Claims in full and to continue paying obligations owing to the Foreign Parties on a postpetition basis in the ordinary course of business, the Debtors' failure to provide notice of the Chapter 11 Cases to the Foreign Parties will cause no harm to the Foreign Parties.  The Noticing Requirements are intended to ensure that all creditors receive proper notice of any actions that could potentially affect their rights so that they may have the opportunity to protect such rights. However, if the Debtors are authorized to pay all Foreign Claims in full, as requested in this Motion, then the Foreign Parties will have no claims against the Debtors' estates to protect.

Instead, they will be unimpaired and, as such, a failure to provide notice of the Chapter 11 Cases will not deprive the Foreign Parties of their due process rights. Further, to the extent that any of the Foreign Parties are determined to be impaired, the Debtors will provide notice as required under the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules. Accordingly, the Debtors submit that waiver of the Noticing Requirements with respect to the Foreign Parties is warranted under the unique circumstances of these Chapter 11 Cases.

19.    Moreover, the Debtors believe that the prepetition secured lenders under the Debtors' existing prepetition credit facility are likely undersecured. Accordingly, all of the funds that the Debtors propose to use to pay the Foreign Claims is cash collateral of such lenders, who fully support the relief requested in this Motion.

## APPLICABLE AUTHORITY

20.    The relief requested in this Motion is supported by several provisions of the Bankruptcy Code that authorize a debtor to honor prepetition obligations in certain circumstances and that allow this Court to regulate to whom notice is sent.

### A.    This Court May Authorize Payment of the Foreign Claims Under Bankruptcy Code Section 363

21.    To the extent that payment of the Foreign Claims would be deemed to constitute a use of property outside the ordinary course of business, a basis for authorizing payment of the Foreign Claims is found under Bankruptcy Code Section 363(b)(1). Bankruptcy Code Section 363(b)(1) permits a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts in this and other circuits have indicated that the use of property of the estate outside of the ordinary course of business is proper where the debtor in possession has articulated a good business reason for such use. See, e.g., In re MPC Computers, LLC, Case No. 08-12667 (PJW) (Bankr. D.

Del. Nov. 10, 2008) (authorizing, pursuant to Section 363, the payment of prepetition claims of some suppliers); In re Conseco, Inc., Case No. 02-49672 (CAD) (Bankr. N.D. Ill. Jan. 14, 2003); Armstrong World Indus., Inc. v. James A. Phillips, Inc., 29 B.R. 391, 397 (S.D.N.Y. 1983) (district court affirmed bankruptcy court's decision under Bankruptcy Code Section 363 authorizing contractor to pay prepetition claims of some suppliers who were potential lien claimants); In re Global Crossing Ltd., 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) ("[A] § 363 application requires a showing that there is a 'good business reason to grant such an application.'") (quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)).

22.     Where a debtor has articulated a valid business justification for a proposed transaction, courts generally apply the business judgment rule in evaluating such transaction. Lange v. Schropp (In re Brook Valley VII, Joint Venture), 496 F.3d 892, 900 (8th Cir. 2007) ("In general, courts do not second-guess business decisions made in good faith."); Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) ("The business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'") (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

23.     The business judgment rule has vitality in chapter 11 cases.  See Lange, 496 F.3d at 900; Integrated Res., 147 B.R. at 656; see also Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").

24.     As detailed above, the goods, materials, equipment, and services provided by the Foreign Parties are vital to the Debtors' continuing business operations. Therefore, and recognizing the limitations of the Bankruptcy Code with respect to the Foreign Creditors, the Debtors submit that the payment of the Foreign Claims is essential to the business purpose of maintaining the flow of goods, materials, equipment, and services from, and continuing other business relationships with, the Foreign Parties. Without the ability to continue all business transactions and employment relationships with the Foreign Parties free from the restraints of the bankruptcy process, many of the Debtors' operations and relationships will be permanently impaired to the detriment of the Debtors' estates and creditors.

**B.     The Court Should Authorize Payment of the Foreign Claims as a Valid Exercise of the Debtors' Fiduciary Duties**

25.     Authority for the payment of Foreign Claims also may be found in Bankruptcy Code Sections 1107(a) and 1108. The Debtors, operating their businesses as debtors in possession under Bankruptcy Code Sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

26.     The CoServ court has noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. That court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," id., and also when the payment was to "sole suppliers of a given product." Id. at 498. The court provided a three-pronged test for determining whether a

preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary

duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id.

27.     For the reasons discussed herein and as set forth more fully in the Helkaa

Declaration, it is evident that payment of the Foreign Claims is appropriate under the

circumstances and necessary to the Debtors' ability to achieve their chapter 11 objectives. In

order to continue their operations in Ecuador and the operations of their non-debtor affiliates in

Colombia and Brazil, the Debtors must continue to receive goods, materials, equipment, and

services from, and engage in other business relationships with, the Foreign Parties without

interruption. Without payment of the Foreign Claims, the Foreign Parties not only may refuse to

conduct business with the Debtors, but also may commence costly and protracted litigation or

enforce "self help" remedies against the Debtors in South America, or otherwise interfere with

the Debtors' foreign business relationships. Further, refusal of the Ecuador Employees to

continue working would grind the Ecuador Branch Office to a halt. This would have a dramatic

negative impact on the Debtors' businesses that is severely disproportionate to the amount of the

Foreign Claims sought to be paid. The Debtors do not believe that they have any practical or

legal alternative to paying the Foreign Claims in light of the difficulty of enforcing a bankruptcy

court order on the Foreign Parties and the unfamiliarity of the Foreign Parties with the

Bankruptcy Code. Hence, the Debtors respectfully submit that the exercise of the Court's

equitable powers to grant the relief requested in this Motion would be appropriate.

**C.    The Court May Rely on the "Necessity of Payment" Doctrine and its General Equitable Powers to Authorize Payment of the Foreign Claims**

28.    Additionally, the Debtors' request for authorization to pay the Foreign Claims should be authorized under Bankruptcy Code Section 105(a) and the "doctrine of necessity."

29.    Under Bankruptcy Code Section 105 this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). For the reasons set forth above, and in light of the need for the Debtors to preserve the going concern value of their businesses, the relief requested herein is proper and should be granted.

30.    The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the restructuring efforts. See In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (payment of creditors' claims authorized under "necessity of payment" doctrine); In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or materials essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[5] In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting

---

[5]    The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport, C. & S.W. R. Co., 106 U.S. 286 (1882), in
*(cont'd)*

that the debtors "may pay pre-petition claims that are essential to continued operation of business"); <u>see also</u> <u>In re NVR L.P.</u>, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor.").

31.    The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence.  <u>See</u> <u>Just For Feet,</u> 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); <u>In re Payless Cashways, Inc.,</u> 268 B.R. 543, 546-47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); <u>In re Ionosphere Clubs, Inc.,</u> 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

32.    As stated above, due to the unique status of the Foreign Parties in the bankruptcy context, payment of the Foreign Claims is necessary to the Debtors' ability to achieve their chapter 11 objectives and is in the best interests of the Debtors' estates.  In addition, the prepetition secured lenders, who the Debtors believe are undersecured, fully consent to the entry of the proposed order granting the relief requested herein.  The Debtors therefore request that the Court exercise its equitable powers to grant the relief requested in this Motion.

---

*(cont'd from previous page)*

affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  <u>See id.</u> at 309-14.  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in <u>Miltenberger</u>.  <u>See</u> <u>In re Lehigh & New Eng. Ry.,</u> 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

**D.     Certain Foreign Claims May be Entitled to Administrative Claim Status**

33.     Certain of the Foreign Parties may have claims for goods delivered to and received by the Debtors within twenty (20) days before the Petition Date (the "**20-Day Goods**"). Pursuant to Bankruptcy Code Section 503(b)(9), any claims arising from the sale of 20-Day Goods will be administrative expenses at the end of these cases.  Bankruptcy Code Section 503(b)(9) provides that:

> After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including –
>
> * * *
>
> (9) the value of goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9);  See In re GWLS Holdings, Inc., No. 08-12430 (PJW) (Bankr. D. Del. Oct. 22, 2008) (order granting payment of vendors' administrative expense claims with priority under Bankruptcy Code Section 503(b)(9)); In re Werner Holding Co. (DE), Inc., No. 06-10578 (Bankr. D. Del. June 13, 2006) (order granting vendors' administrative expense claims with priority under Bankruptcy Code Sections 503(b) and 507(a)(2)); see also In re Pliant Corp., No. 06-10001 (Bankr. D. Del. Jan. 4, 2006) (same); In re Dana Corp., No 06-10354 (BRL) (Bankr. S.D.N.Y. Mar. 3, 2006) (order authorizing payment of administrative priority claims under Section 503(b)(9)).  See also In re Rio Valley Motors Co., LLC, Case No. 11-06-11866-SS, 2008 WL 824271, at *1-2 (Bankr. D.N.M. Mar. 24, 2008) (holding Bankruptcy Code Section 503(b)(9) gave administrative priority to prepetition claim for value of vehicle delivered to debtor within 20 days of chapter 11 bankruptcy filing); In re WETCO Rest. Group, LLC, Case No. 07-51169 (RS), 2008 WL 1848779, at *2 (Bankr. W.D. La. Apr. 23, 2008) (finding no Bankruptcy Code

Section 503(b)(9) claim for goods delivered within 20 days of petition, where creditor was prepaid for such goods).

34.    Additionally, bankruptcy courts have held that the timing of the payment of administrative expenses allowed under Bankruptcy Code Section 503(b)(9) is within the discretion of the court.  See In re Tubular Techs., LLC, 372 B.R. 820, 824 & n.4 (Bankr. D.S.C. 2007) (bankruptcy court may determine when Bankruptcy Code Section 503(b)(9) claim is paid); In re Bookbinders' Rest., Inc., Case No. 06-12302, 2006 WL 3858020, at *3-4 (Bankr. E.D. Pa. Dec. 28, 2006) (timing of the payment of Bankruptcy Code Section 503(b)(9) claim "is within the discretion of the bankruptcy court").  Thus, the Debtors submit that, under the circumstances, it would be appropriate for the Court to exercise its discretion to allow Foreign Claims for 20-Day Goods to be paid in the ordinary course.

**E.    Waiver of Noticing Requirements**

35.    The Bankruptcy Rules give the Court the authority to regulate to whom notice is sent during the course of the Chapter 11 Cases.  Bankruptcy Rule 2002(m) provides that "[t]he court may from time to time enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules."  Fed. R. Bankr. P. 2002(m).  In addition, Bankruptcy Rule 9007 supplements Bankruptcy Rule 2002, providing that "[w]hen notice is to be given under these rules, the court shall designate, if not otherwise specified herein, the time within which, the entities to whom, and the form and manner in which the notice shall be given . . . ."  Fed. R. Bankr. P. 9007.

36.    The Court also has authority under Bankruptcy Code Section 105(a) and the doctrine of necessity to waive the Noticing Requirements with respect to the Foreign Parties since, as stated above, such requirements are unnecessary under the circumstances and will cause

severe harm to the Debtors' estates and parties in interests. Accordingly, the Debtors request that the Court exercise its authority under Bankruptcy Rules 2002(m) and 9007 and Bankruptcy Code Section 105(a) to grant the relief requested in this Motion.

**F.    Bankruptcy Rule 6003 has been Satisfied and Bankruptcy Rule 6004 Should be Waived**

37.    The request for authorization to pay the Foreign Claims is subject to Bankruptcy Rule 6003, which provides for authorization to be obtained within twenty-one (21) days after the Petition Date only if necessary to avoid immediate and irreparable harm. The Debtors submit that standard is satisfied here for all the reasons described above. Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

38.    In addition, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to preserve the value of their estates. The Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

39.    Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute a Foreign Claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (f) otherwise affecting the Debtors' rights

under Bankruptcy Code Section 365 to assume or reject any executory contract with any party

subject to the proposed Order once entered.  Further, none of the Debtors or their officers,

directors, attorneys or agents will have any liability on account of any decision by the Debtors

not to pay a Foreign Claim, and nothing contained in this order shall be deemed to increase,

reclassify, elevate to an administrative expense status or otherwise affect the Foreign Claims to

the extent they are not paid.

> 40.    Additionally, nothing in this Motion is intended to modify or waive any of

the Debtors' rights with respect to goods and services requested or received from the Foreign

Parties including the Debtors' rights to (a) cancel a purchase order; (b) decline the acceptance of

goods and services; (c) return any defective, nonconforming or unacceptable goods; or (d)

contest the amount of any invoice or claims on any grounds.

### CONSENT TO JURISDICTION

> 41.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a

final judgment or order with respect to this Motion if it is determined that the Court would lack

Article III jurisdiction to enter such final order or judgment absent consent of the parties.

### NOTICE OF MOTION AND INTERIM ORDER

> 42.    Notice of this Motion will be given to: (a) the Office of the United States

Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' prepetition secured

financing; (c) counsel to the agent for the Debtors' postpetition secured financing; (d) the

Internal Revenue Service; (e) the Canada Revenue Agency; (f) the Ontario Securities

Commission; (g) the United States Attorney for the District of Delaware; (h) the Attorneys

General for the states of California, New Mexico, North Dakota, Oklahoma, and Texas; (i) the

parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; and (j)

all parties entitled to notice pursuant to Local Rule 9013-1(m) (other than the Foreign Parties) (collectively, the "**Initial Notice Parties**"). The Debtors submit that, under the circumstances, no other or further notice is required.

43.  In the event the Court enters an interim order granting this Motion (the "**Interim Order**"), within five (5) business days thereafter, the Debtors propose to serve notice of such entry on the Initial Notice Parties and all parties that have filed prior to such service date requests for notice pursuant to Bankruptcy Rule 2002. The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than seven days prior to the final hearing to be held on the Motion (the "**Objection Deadline**"). If an objection is timely filed and served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion. If no objections are timely filed and served, the Debtors' counsel will file a certification of counsel to that effect attaching a final form of order.

**WHEREFORE**, the Debtors respectfully request that the Court enter interim and final orders, substantially in the forms attached hereto as Exhibit A and Exhibit B, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: Wilmington, Delaware  
February 2, 2014

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Kara Hammond Coyle*  
Michael R. Nestor (No. 3526)  
Kara Hammond Coyle (No. 4410)  
Rodney Square  
1000 North King Street  
Wilmington, DE 19801  
Telephone: 302-571-6600  
Facsimile: 302-571-1253  
Email: mnestor@ycst.com  
          kcoyle@ycst.com

- and -

Mitchell A. Seider  
Keith A. Simon  
David A. Hammerman  
Annemarie V. Reilly  
LATHAM & WATKINS LLP  
885 Third Avenue  
New York, New York 10022-4834  
Telephone:  212-906-1200  
Fax:  212-751-4864  
Email: mitchell.seider@lw.com  
          keith.simon@lw.com  
          david.hammerman@lw.com  
          annemarie.reilly@lw.com

Proposed Counsel for Debtors and  
Debtors in Possession

# EXHIBIT A

Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

----------------------------------------------------------- x
In re:                                              :   Chapter 11
                                                    :
TUSCANY INTERNATIONAL HOLDINGS                      :   Case No. 14-10193 (_____)
(U.S.A.) LTD., et al.,                              :
                                                    :   Jointly Administered
                Debtors.[1]                         :
----------------------------------------------------------- x

### INTERIM ORDER (I) PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b)(9), 1107(a) AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF FOREIGN CLAIMS AND (II) PURSUANT TO FED. R. BANKR. P. 2002(m), 6003 AND 9007 WAIVING NOTICING REQUIREMENTS

Upon the motion (the "**Motion**")[2] of the Debtors for an order, under Bankruptcy

Code Sections 105(a), 363(b), 503(b)(9), 1107(a) and 1108, Bankruptcy Rules 2002, 6003, and

9007 and Local Rule 2002-1 (i) authorizing, but not directing, the Debtors to pay certain

prepetition obligations owing to the Foreign Parties, (ii) confirming their right to continue to pay

or otherwise honor obligations owing to or for the benefit of the Foreign Parties postpetition, in

the ordinary course of business, and (iii) waiving the Noticing Requirements with respect to the

Foreign Parties; and the Court having reviewed the Motion and the Helkaa Declaration; and the

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors and other parties in interest; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Amended Standing Order of Reference from the United States District

---

[1]      The Debtors in these cases are Tuscany International Holdings (U.S.A.) Ltd. and Tuscany International Drilling Inc. The last four digits of Tuscany International Holdings (U.S.A.) Ltd.'s U.S. federal tax identification number are 8192. The last four digits of Tuscany International Drilling Inc.'s Canadian tax identification number are 4278. The address for the Debtors is 1950, 140 – 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

and upon the record herein; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Motion is GRANTED as set forth herein.

2.     The Debtors are authorized, in their discretion, to pay the Foreign Claims

owed to or on behalf of the Foreign Parties.

3.     The Debtors are authorized, in their discretion, to continue to pay or

otherwise honor obligations owing to or for the benefit of the Foreign Parties in the ordinary

course of business during the pendency of these Chapter 11 Cases.

4.     The Noticing Requirements of the Bankruptcy Code, Bankruptcy Rules

and Local Rules, including, but not limited to, Bankruptcy Rules 2002 and 2015, and Local Rule

2002-1, are hereby waived solely with respect to the Foreign Parties.

5.     The Debtors' banks and financial institutions shall be and hereby are

authorized and directed to receive, process, honor and pay all prepetition and postpetition checks

and fund transfers on account of the Foreign Claims, provided that sufficient funds are on deposit

in the applicable accounts to cover such payments.  The Debtors' banks and financial institutions

are authorized to rely on the representations of the Debtors as to which checks and fund transfers

should be honored and paid pursuant to this Order.

6.     The authority granted by this Order to pay certain claims shall not be

construed as: (a) an admission by the Debtors as to the validity of any claim against any Debtor

or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to

dispute any claim or lien on any grounds; (c) a promise by the Debtors to pay any claim; (d) an implication or admission by the Debtors that any particular claim would constitute a Foreign Claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (f) otherwise affecting the Debtors' rights under Bankruptcy Code Section 365 to assume or reject any executory contract with any party subject to this Order.

7. None of the Debtors or their officers, directors, attorneys or agents shall have any liability on account of any decision by the Debtors not to pay a Foreign Claim, and nothing contained in this order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Foreign Claims to the extent they are not paid.

8. Nothing in the Motion or this Order, nor the Debtors' implementation of the relief granted in this Order, shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Foreign Parties, including the Debtors' rights to (a) cancel a purchase order, (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good; (d) contest the amount of any invoice or claims on any grounds; or (e) terminate the employment or otherwise modify the terms of employment in any manner of any Foreign Party, as applicable.

9. Notwithstanding the relief granted herein, no action by any Debtor is permitted to the extent that it would be inconsistent with any cash collateral and/or debtor in possession financing order entered by this Court.

10. Notwithstanding anything to the contrary in this Order or to the Motion, any payment, obligation or other relief authorized by this Order shall be subject to and limited by

the requirements imposed on the Debtors under the terms of any interim and/or final orders approving any debtor in possession financing.

11.    To the extent that there may be any inconsistency between the terms of the interim or final order approving the proposed debtor in possession financing, if and when entered, and this Order, the terms of the interim or final order approving the proposed debtor in possession financing, as applicable, shall govern.

12.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13.    The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

14.    Within five (5) business days after entry of this Order, the Debtors shall serve notice of the Motion (to the extent not already provided) and entry of this Order on the Initial Notice Parties and all parties that have filed prior to such service date requests for notice pursuant to Bankruptcy Rule 2002.  The notice shall provide that any objections to the relief granted in this Order must be filed with the Court and served on counsel for the Debtors no later than seven days prior to the final hearing with respect to the Motion (the "**Objection Deadline**").  In the event that no objections to this Order are received by the Objection Deadline, the Debtors' counsel shall file a certification of counsel to that effect attaching a final form of order.  The final hearing with respect to the Motion shall be held on _____, 2014, at _:___ _.m.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.


Dated: Wilmington, Delaware
        _____, 2014


                                        _____
                                        THE HONORABLE [_____]
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                    :    Chapter 11
                                                          :
TUSCANY INTERNATIONAL HOLDINGS                            :    Case No. 14-10193 (_____)
(U.S.A.) LTD., et al.,                                    :
                                                          :    Jointly Administered
              Debtors.[1]                                 :

------------------------------------------------------------ x

## FINAL ORDER (I) PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 503(b)(9), 1107(a) AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING PAYMENT OF FOREIGN CLAIMS AND (II) PURSUANT TO FED. R. BANKR. P. 2002(m), 6003 AND 9007 WAIVING NOTICING REQUIREMENTS

Upon the motion (the "**Motion**")[2] of the Debtors for an order, under Bankruptcy

Code Sections 105(a), 363(b), 503(b)(9), 1107(a) and 1108, Bankruptcy Rules 2002, 6003, and

9007 and Local Rule 2002-1 (i) authorizing, but not directing, the Debtors to pay certain

prepetition obligations owing to the Foreign Parties, (ii) confirming their right to continue to pay

or otherwise honor obligations owing to or for the benefit of the Foreign Parties postpetition, in

the ordinary course of business, and (iii) waiving the Noticing Requirements with respect to the

Foreign Parties; and the Court having reviewed the Motion, the Helkaa Declaration and the

Interim Order entered on _____, 2014; and the Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors and

other parties in interest; and the Court having jurisdiction to consider the Motion and the relief

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing

---

[1]      The Debtors in these cases are Tuscany International Holdings (U.S.A.) Ltd. and Tuscany International Drilling Inc. The last four digits of Tuscany International Holdings (U.S.A.) Ltd.'s U.S. federal tax identification number are 8192. The last four digits of Tuscany International Drilling Inc.'s Canadian tax identification number are 4278. The address for the Debtors is 1950, 140 – 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3.

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, in their discretion, to pay the Foreign Claims owed to or on behalf of the Foreign Parties.

3.      The Debtors are authorized, in their discretion, to continue to pay or otherwise honor obligations owing to or for the benefit of the Foreign Parties in the ordinary course of business during the pendency of these Chapter 11 Cases.

4.      The Noticing Requirements of the Bankruptcy Code, Bankruptcy Rules and Local Rules, including, but not limited to, Bankruptcy Rules 2002 and 2015 and Local Rule 2002-1, are hereby waived solely with respect to the Foreign Parties.

5.      The Debtors' banks and financial institutions shall be and hereby are authorized and directed to receive, process, honor and pay all prepetition and postpetition checks and fund transfers on account of the Foreign Claims, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.  The Debtors' banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Order.

6.      The authority granted by this Order to pay certain claims shall not be construed as: (a) an admission by the Debtors as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to

01:14961754.1

SF\4633252.9

dispute any claim or lien on any grounds; (c) a promise by the Debtors to pay any claim; (d) an implication or admission by the Debtors that any particular claim would constitute a Foreign Claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to Bankruptcy Code Section 365; or (f) otherwise affecting the Debtors' rights under Bankruptcy Code Section 365 to assume or reject any executory contract with any party subject to this Order.

7.    None of the Debtors or their officers, directors, attorneys or agents shall have any liability on account of any decision by the Debtors not to pay a Foreign Claim, and nothing contained in this order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Foreign Claims to the extent they are not paid.

8.    Nothing in the Motion or this Order, nor the Debtors' implementation of the relief granted in this Order, shall be deemed to modify or waive any of the Debtors' rights with respect to goods and services requested or received from the Foreign Parties, including the Debtors' rights to (a) cancel a purchase order, (b) decline the acceptance of goods and services, (c) return any defective, nonconforming or unacceptable good; (d) contest the amount of any invoice or claims on any grounds; or (e) terminate the employment or otherwise modify the terms of employment in any manner of any Foreign Party, as applicable.

9.    Notwithstanding the relief granted herein, no action by any Debtor is permitted to the extent that it would be inconsistent with any cash collateral and/or debtor in possession financing order entered by this Court.

10.    Notwithstanding anything to the contrary in this Order or to the Motion, any payment obligation or other relief authorized by this Order shall be subject to and limited by

the requirements imposed on the Debtors under the terms of any interim and/or final orders approving any debtor in possession financing.

11.     To the extent that there may be any inconsistency between the terms of the interim or final order approving the proposed debtor in possession financing, if and when entered, and this Order, the terms of the interim or final order approving the proposed debtor in possession financing, as applicable, shall govern.

12.     Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

13.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

14.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Order.

Dated:  Wilmington, Delaware
        _____, 2014


                              _____
                              THE HONORABLE [_____]
                              UNITED STATES BANKRUPTCY JUDGE