## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------- x

In re:   :   Chapter 11

  :

TUSCANY INTERNATIONAL HOLDINGS   :   Case No. 14-10193 (KG)

(U.S.A.) LTD., et al.,   :

  :   Jointly Administered

Debtors.[1]   :

------------------------------------------------------- x   **Re: Docket No. 12**

### INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, (6) AUTHORIZING THE ROLL-UP OF CERTAIN PREPETITION OBLIGATIONS, (7) SCHEDULING A FINAL HEARING AND (8) GRANTING RELATED RELIEF

This matter having come before the Court upon the motion (the "DIP Motion") by Tuscany International Drilling Inc. ("TID" or "Borrower") and Tuscany International Holdings (U.S.A.) Ltd. ("TIH"), which are debtors and debtors in possession (each a "Debtor" and together, the "Debtors") in the above-captioned Chapter 11 cases, pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of an interim order (this "Interim Order") inter alia:

    i.    authorizing the Debtors to obtain secured postpetition financing on a senior

---

[1]     The Debtors in these cases are Tuscany International Holdings (U.S.A.) Ltd. and Tuscany International Drilling Inc. The last four digits of Tuscany International Holdings (U.S.A.) Ltd.'s U.S. federal tax identification number are 8192. The last four digits of Tuscany International Drilling Inc.'s Canadian tax identification number are 4278. The address for the Debtors is 1950, 140 – 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3.

708145271.18

secured, superpriority basis of a dual-draw term loan credit facility of up to an aggregate principal

amount of $70,000,000 plus certain accrued and unpaid interest (the "DIP Facility") pursuant to

the terms and conditions of an amendment and restatement of the Prepetition Credit Agreement (as

defined below) (as amended, the "DIP Credit Agreement"), to be agreed by and among the

Borrower, TIH, Tuscany South America Ltd. ("TSA"), each Prepetition Guarantor (defined

below) and any subsidiary of TID that becomes a guarantor under the DIP Credit Agreement by

executing a guarantor joinder agreement (collectively with the Prepetition Guarantors and TSA,

the "Non-Debtor Obligors"), the other lenders party thereto from time to time (collectively,

including the DIP Agent, the "DIP Lenders"), Credit Suisse AG, as Administrative Agent (the

"DIP Agent"), The Bank of New York Mellon, as Global Collateral Agent, Credit Suisse AG,

Cayman Islands Branch, as Special Collateral Agent, and BNY Mellon Serviços Financeiros

DTVM S.A., as Brazilian Collateral Agent (together, the "DIP Collateral Agents", and collectively

with the DIP Agent and the DIP Lenders, the "DIP Secured Parties") and the "Required Lenders"

under and as defined in the Prepetition Credit Agreement (as defined below)[2];

      ii.     authorizing the Debtors to execute and deliver the DIP Credit Agreement and all

other related loan and security documents related to the DIP Facility (each as may be amended,

supplemented, restated, or otherwise modified from time to time, and collectively with the DIP

Credit Agreement, the "DIP Documents") by and among the Debtors, the Non-Debtor Obligors,

---

[2]     As used herein, the "Required Prepetition Lenders" shall have the meaning set forth in the DIP Credit Agreement, i.e., at any time of determination, Prepetition Lenders (as defined in the DIP Credit Agreement) holding more than 50% of the aggregate principal amount of the Prepetition Loans (as defined in the DIP Credit Agreement) outstanding on such date, but not fewer than two Prepetition Lenders at any time there are three or more Prepetition Lenders.

     "Required DIP Lenders" shall have the meaning set forth in the DIP Credit Agreement, i.e., at any time of determination, DIP Lenders holding more than 66 2/3% of the sum of (a) the aggregate principal amount of the DIP Loans (as defined in the DIP Credit Agreement) outstanding on such date plus (b) the aggregate amount of the unused NM Commitments (as defined in the DIP Credit Agreement) as of such date, but not fewer than two DIP Lenders at any time there are three or more DIP Lenders.

the DIP Agent, the DIP Collateral Agents and the DIP Lenders, and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

iii.    granting an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code to the DIP Agent and the DIP Secured Parties on account of the DIP Facility and all obligations owing thereunder and under the DIP Documents related to the DIP Facility to the DIP Secured Parties, which claims shall not be subject to discharge under section 1141 of the Bankruptcy Code (collectively, and including without limitation the Roll-Up Sub-Tranche (as defined below) and all other obligations under or with respect to the DIP Credit Agreement related to the DIP Facility, the "DIP Obligations") in each of the Cases and any Successor Cases (as defined below);

iv.    pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, granting to the DIP Agent, for the benefit of itself and the other DIP Secured Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without limitation, all property constituting "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein, to secure repayment of the DIP Obligations;

v.    authorizing and directing the Debtors to pay the principal, interest, reasonable fees, expenses and other amounts payable under the DIP Documents related to the DIP Facility as such become due and payable, including, without limitation (and to the extent applicable), up-front fees, arrangement fees, commitment fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's, the DIP Collateral Agents' and the DIP Lenders' respective attorneys, advisers, accountants, and other consultants, all to the extent provided in and in accordance with the terms of the DIP Documents (as applicable);

708145271.18
NY\6127635.16

01:14961770.2

vi.     authorizing the Roll-Up (as defined below) pursuant to the Roll-Up Sub-Tranche (as defined below);

vii.    authorizing the use of Cash Collateral of the Prepetition Secured Creditors (as defined below) under the Prepetition Documents (as defined below), and providing adequate protection to the Prepetition Secured Creditors for any diminution in value of their interests in the Prepetition Collateral (as defined below), including Cash Collateral;

viii.   vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Interim Order;

ix.     scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing; and

x.      granting related relief.

The Court having considered the DIP Motion and the evidence submitted at the interim hearing by the Debtors (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c), and (d), and 9014, and the applicable Local Rules; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors, and is essential for the continued operation of the Debtors' businesses; and it further appearing that the Debtors are unable to obtain unsecured credit for money borrowed allowable as an administrative expense

4

under section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of holders of liens on the property of the estate on which liens are to be granted; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND ALL PLEADINGS FILED HEREIN, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     *Petition Date*.   On February 2, 2014 (the "Petition Date"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court") commencing these chapter 11 cases (the "Cases").

B.     *Debtors in Possession*.   The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue*.   This Court has jurisdiction, pursuant to 28 U.S.C. § 1334, and authority under 28 U.S.C. § 157 and the General Order of Reference to Bankruptcy Judges over these proceedings, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Committee Formation*.   As of the date hereof, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") has not yet appointed an official committee of unsecured creditors or any other statutory committee in these Cases pursuant to section 1102 of the Bankruptcy Code (each, a "Statutory Committee").

5

E.    _Debtors' Stipulations_.  Without prejudice to the rights of parties in interest (other than the Debtors) to the extent set forth in paragraph 34 herein, the Debtors admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(ix) hereof shall be referred to herein as the "Debtors' Stipulations"):

(i)    _Prepetition Facility_.  Pursuant to that certain Third Amended and Restated Credit Agreement, dated as of December 23, 2013, as amended and restated from time to time prior to the Petition Date (the "Prepetition Credit Agreement," and together with all other loan documents, security instruments and other documents related to, referenced in or executed in connection with the Prepetition Credit Agreement prior to the Petition Date, and together with the Scotiabank Swap Agreement (as defined below), the "Prepetition Documents"), among TID, TSA (together with TID, the "Prepetition Borrowers"), certain affiliates of TID, as guarantors (the "Prepetition Guarantors" and, collectively with the Prepetition Borrowers, the "Prepetition Obligors"), the lenders party to the Prepetition Credit Agreement (individually or collectively, as the case may be, the "Prepetition Lenders"), Credit Suisse AG, as administrative agent (in such capacity, the "Prepetition Agent") and special collateral agent (in such capacity, the "Prepetition Special Collateral Agent"), The Bank of New York Mellon, as global collateral agent (in such capacity, the "Prepetition Global Collateral Agent"), and BNY Mellon Serviços Financeiros DTVM S.A., as Brazilian collateral agent (in such capacity, the "Prepetition Brazilian Collateral Agent," and together with the Prepetition Special Collateral Agent and the Prepetition Global Collateral Agent, the "Prepetition Collateral Agents"), the Prepetition Lenders provided loans to or for the benefit of the Prepetition Borrowers and the Prepetition Guarantors provided Guaranties (as defined in the Prepetition Credit Agreement) of the obligations of the Prepetition Borrowers to the extent set forth in the Prepetition Credit Agreement (the "Prepetition Facility").

6

(ii)    *Scotiabank Swap Obligations.*  Pursuant to inter alia that certain ISDA Master Agreement dated January 12, 2012 (together with all other agreements, security instruments and other documents related to, referenced in or executed in connection with such ISDA Master Agreement, the "Scotiabank Swap Agreement"), between TID and The Bank of Nova Scotia ("Scotiabank", and collectively with the Prepetition Lenders, the Prepetition Agent and the Prepetition Collateral Agents, the "Prepetition Secured Creditors"), and as a result of the termination of all transactions thereunder, TID currently has outstanding obligations to Scotiabank (the "Scotiabank Swap Obligations") which are guaranteed by TID and by the Non-Debtor Obligors and are secured by the Prepetition Liens (as defined below) and which are in the amount of $4,104,310.31.

(iii)    *Prepetition Senior Obligations.*  As of the Petition Date, the principal amount outstanding under the Prepetition Credit Agreement was not less than $197,871,123.43 (together with any amounts incurred or accrued but unpaid prior to the Petition Date in accordance with the Prepetition Credit Agreement, including, without limitation, accrued and unpaid interest (including at applicable default rates), any fees, expenses and disbursements (including, without limitation, reasonable attorneys' and other professionals' fees, related expenses and disbursements), reimbursement obligations, indemnification obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Prepetition Borrowers' obligations pursuant to the Prepetition Credit Agreement relating solely to the loans provided thereunder, including without limitation the Guaranties (as defined in the Prepetition Credit Agreement) of the forgoing by the Prepetition Guarantors, the "Prepetition Credit Agreement Obligations," and together with the Scotiabank Swap Obligations, the "Prepetition Senior

7

Obligations").

(iv)    *Prepetition Collateral.*  To secure the Prepetition Senior Obligations, and pursuant to the Prepetition Documents, the Prepetition Obligors granted to the Prepetition Agent security interests in and liens on certain assets of TID and the Non-Debtor Obligors as described in the Prepetition Documents (the "Prepetition Liens"), including, without limitation, (i) all accounts, chattel paper, cash and deposit accounts, documents, drilling rigs, equipment, general intangibles, instruments, inventory, investment property (including equity interests in subsidiaries), letter of credit rights, receivables, commercial tort claims, and all books, records and supporting obligations relating to any of the foregoing, (ii) all pledged equity interests described in the Collateral Documents (as defined in the Prepetition Credit Agreement), (iii) all proceeds, products, rents, offspring and/or profits of any of the foregoing (collectively, subject to certain exclusions set forth in the Prepetition Documents, the "Prepetition Collateral").

(v)    *Prepetition Liens.*  The Prepetition Liens on the Prepetition Collateral were duly and validly perfected as of the Petition Date.

(vi)    *Validity of Prepetition Liens, Claims and Obligations.*    The Debtors acknowledge and agree that:    (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable (whether under the Bankruptcy Code or under any state or foreign law relating to avoidance of transfers or obligations) and perfected, (b) the Prepetition Liens have priority over any and all other liens on Prepetition Collateral, subject only to certain liens that were otherwise permitted by the Prepetition Credit Agreement only to the extent that, as of the Petition Date, such liens were valid, properly perfected (or subsequently perfected as permitted by Section 546(b) of the Bankruptcy Code), non-avoidable and senior in priority to the Prepetition Liens securing the

8

Prepetition Obligations ("<u>Senior Prior Liens</u>")[3]; (c) the Prepetition Senior Obligations constitute legal, valid, binding, and non-avoidable (whether under the Bankruptcy Code or under any state or foreign law relating to avoidance of transfers or obligations) obligations of the Prepetition Obligors, enforceable in accordance with the terms of the Prepetition Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Senior Obligations exist, and no portion of the Prepetition Liens or the Prepetition Senior Obligations is subject to any challenge or defense, including, without limitation, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no offsets, defenses, claims, objections, challenges, and/or causes of action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code (or under any state or foreign law relating to avoidance of transfers or obligations), against the Prepetition Secured Creditors and/or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Prepetition Documents, respectively; (f) the Prepetition Senior Obligations are allowed secured claims to the extent of the value of the Prepetition Collateral within the meaning of section 506 of the Bankruptcy Code, together with accrued and unpaid interest (including at applicable default rates), fees (including, without limitation, reasonable attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of such obligations; and (g) any payments made on account of the Prepetition

---

[3]    Nothing herein shall constitute a finding or ruling by this Court that any such Senior Prior Liens are valid, senior, perfected and/or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Agent, the DIP Lenders, the DIP Collateral Agents, the Prepetition Secured Creditors and/or any Statutory Committee to challenge the validity, priority, perfection or extent of any such Senior Prior Lien and/or security interest.

708145271.18
NY\6127635.16

01:14961770.2

Senior Obligations to or for the benefit of the Prepetition Agent or the other Prepetition Secured Creditors prior to the Petition Date, were payments out of the Prepetition Agent's and the Prepetition Secured Creditors' Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(vii)    *Releases.*  The Debtors and anyone who claims an interest by, through or under the Debtors or the Debtors' estates hereby forever and irrevocably release, discharge, and acquit the former, current, or future DIP Agent, DIP Lenders, other DIP Secured Parties, Prepetition Agent, Prepetition Lenders, any other Prepetition Secured Creditors and each of their respective former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the DIP Facility, the DIP Documents, the Prepetition Documents, the Prepetition Senior Obligations, or the transactions contemplated hereunder or thereunder including, without limitation, (i) any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), so-called "lender liability," claims, counterclaims, cross-claims, recoupment, defenses, disallowance, impairment, or any other challenges under the Bankruptcy Code or any other applicable domestic or foreign

10

law or regulation by any person or entity, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Agent, the Prepetition Lenders, any other Prepetition Secured Creditors, the DIP Agent, the DIP Lenders, and/or other DIP Secured Parties.

(viii)    *Cash Collateral.*    The Debtors represent that substantially all of the Debtors' cash, including the cash in their deposit accounts that are subject to Prepetition Liens, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral, and is therefore Prepetition Collateral, of the Prepetition Secured Creditors.

(ix)    *Default by the Debtors.*    The Debtors acknowledge and stipulate that the Prepetition Obligors are in default under the Prepetition Documents. Such defaults have been acknowledged as set forth in (i) that certain Forbearance Agreement, dated January 24, 2014 (the "Swap Forbearance"), between TID and The Bank of Nova Scotia, (ii) that certain Forbearance Agreement, dated January 24, 2014 (the "Amortization Forbearance"), by and among TID, TSA, the guarantors party thereto, the Prepetition Lenders party thereto, and the Prepetition Agent, and (iii) that certain Second Omnibus Amendment, Restatement and Forbearance Agreement dated as of January 31, 2014, among the Prepetition Obligors, TIH, the Prepetition Lenders party thereto, the Prepetition Collateral Agents, and the Prepetition Agent (as amended, modified or otherwise supplemented, the "Omnibus Agreement," and together with the Swap Forbearance and the Amortization Forbearance, the "Forbearance Agreements"). The Required Prepetition Lenders have agreed on behalf of the Prepetition Secured Creditors to forbear from exercising remedies against the Debtors and the Non-Debtor Obligors (including without limitation acceleration of

11

maturity or foreclosing on collateral) as set forth in the Forbearance Agreements, which Forbearance Agreements are sufficient to prevent the Prepetition Secured Creditors from exercising such remedies as set forth therein.

      F.    *Findings Regarding the Postpetition Financing.*

      (i)    *Need for Postpetition Financing and Use of Cash Collateral.* The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance working capital needs and to otherwise finance their operations requires the availability of capital from the DIP Facility and the use of Cash Collateral, the absence of which would immediately and irreparably harm the Debtors, their estates, the Non-Debtor Obligors and their respective creditors and equity holders, and the possibility of a successful reorganization. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

      (ii)    *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain adequate financing from sources other than the DIP Lenders or on terms more favorable than under the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors have also been unable to obtain adequate credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b) and 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a

12

708145271.18
NY\6127635.16

01:14961770.2

lien. Adequate financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired tangible and intangible property with the priorities set forth in paragraph 7 hereof, (2) superpriority claims and liens, and (3) the other protections set forth in this Interim Order.

(iii)     *Priming of the Prepetition Liens.* The priming of the Prepetition Liens and all other liens on the Prepetition Collateral (other than the Senior Prior Liens) under section 364(d) of the Bankruptcy Code, as contemplated by the DIP Facility and as further described below, will enable the Debtors to obtain the DIP Facility and to continue to operate their business to the benefit of the estates and creditors. However, the Prepetition Agent and the other Prepetition Secured Creditors, with respect to the Prepetition Senior Obligations, are entitled to receive adequate protection in the form set forth in this Interim Order pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral) resulting from the Debtors' use, sale or lease of such collateral, the imposition of the automatic stay, the priming of the Prepetition Liens on the Prepetition Collateral, and the subordination of the Prepetition Liens to the Carve Out (collectively, the "Diminution in Value").

(iv)     *Use of Proceeds of the DIP Facility.* As a condition to the entry into the DIP Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the DIP Agent, the DIP Secured Parties, the Prepetition Agent and the Prepetition Secured Creditors require, and the Debtors have agreed, that proceeds of the new-money tranche of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents and in accordance with the budgets prepared by the Debtors in accordance

13

708145271.18
NY\6127635.16

01:14961770.2

with the terms of the DIP Documents (as the same may be modified from time to time consistent with the terms of the DIP Documents, and subject to such variances as permitted therein, collectively, the "Budget"),[4] solely (a) to finance working capital needs and capital expenditures specified in the Budget, (b) to pay the reasonable fees and expenses of the Prepetition Agent, the Prepetition Secured Creditors (solely to the extent owing pursuant to the Prepetition Documents), the DIP Agent and/or the DIP Collateral Agents (including prepetition and postpetition fees and expenses of their respective professionals), and to pay the fees, costs and expenses incurred by the Debtors (as specified in the Budget) in connection with the Cases and (c) to fund any Non-Debtor Obligors in accordance with the Budget.

    (v) *Roll-Up.* The re-designation of a portion of the Prepetition Senior Obligations as DIP Loans in accordance with this Interim Order is necessary as the DIP Agent and the DIP Lenders will not otherwise extend credit to the Debtors under the DIP Facility, which includes up to $35,000,000 in principal amount of new money.  Such re-designation will not prejudice the Debtors or their estates, because such re-designation of such amounts is subject to the rights of parties in interest under paragraph 34 herein.  A portion of such re-designation must be completed pursuant to the Interim Order in an aggregate amount corresponding to the aggregate principal amount of new money DIP Loans being made pursuant to the Interim Order (plus an amount equal to all accrued and unpaid interest on such Prepetition Senior Obligations as of the date re-designated under the DIP Credit Agreement and this Interim Order at the rate(s) in effect, including applicable default rates, under the Prepetition Documents), as a significant amount of the DIP Facility will be necessary upon entry of the Interim Order in order to fund the Debtors' ongoing operations.  Such re-designation will also result in a lower total cost of borrowing by the

---

[4] The Budget is attached hereto as Exhibit 1.

708145271.18
NY\6127635.16

01:14961770.2

Debtors, as the interest rate being charged under the DIP Facility is less than the default interest rate that is otherwise payable pursuant to the Prepetition Credit Agreement.

G.    *Adequate Protection*.  The Prepetition Agent, for the benefit of itself and the Prepetition Secured Creditors, are each entitled to receive adequate protection to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including Cash Collateral) pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Pursuant to sections 361, 363 and 507(b) of the Bankruptcy Code, as adequate protection, the Prepetition Agent, for the benefit of itself and the Prepetition Secured Creditors, will receive adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein.

H.    *Sections 506(c) and 552(b)*.  In light of, among other things, (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims to the current payment of administrative expenses of the Debtors' estates in accordance with the Budget and the DIP Documents and the Carve Out; and (ii) the Prepetition Agent's and the Prepetition Secured Creditors' agreement to subordinate their liens and superpriority claims to the Carve Out and the DIP Liens, (a) subject to entry of a Final Order (as defined below), the Prepetition Agent and the Prepetition Secured Creditors are each entitled to a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code, and (b) subject to entry of a Final Order (as defined below), the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Creditors, are each entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code (which waiver shall be without prejudice to the contention of the DIP Agent or the DIP Lenders, that section 506(c) of the Bankruptcy Code does not apply to secured claims incurred pursuant to section 364 of the Bankruptcy Code).

I.    *Good Faith of the Agents and the Lenders*.

15

(i)    *Willingness to Provide Financing.*  The DIP Lenders have indicated a willingness to provide financing to the Debtors pursuant to the DIP Documents subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and the DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith within the meaning of section 364(e) of the Bankruptcy Code, and that the DIP Agent's and the DIP Lenders' claims, superpriority claims, security interests and liens and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Facility, and the fees to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility, the DIP Documents and the authorized use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors.  Use of Cash Collateral and credit to be extended under the DIP Facility and the DIP Documents shall be deemed to have been allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Secured Parties are therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order, and will not be affected by any subsequent reversal,

16

modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

J.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been given to: (a) the U.S. Trustee; (b) counsel to the agent for the Debtors' prepetition secured financing; (c) counsel to the agent for the Debtors' postpetition secured financing; (d) the Internal Revenue Service; (e) the Canada Revenue Agency; (f) the Ontario Securities Commission; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; and (h) all parties entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "Initial Notice Parties").  The parties have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order.  Under the circumstances, such notice of the DIP Motion, the relief requested therein and the Interim Hearing complies with Bankruptcy Rule 4001(b), (c) and (d) and the Local Rules and no other notice need be provided for entry of this Interim Order.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Interim Financing Approved.  The DIP Motion is granted, the Interim Financing (as defined below) is authorized and approved, and the use of Cash Collateral is authorized, in each case on an interim basis and subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled.  All objections to the Interim Financing to the extent not withdrawn or resolved (including all reservations of rights included therein) are hereby overruled.

17

708145271.18
NY\6127635.16

01:14961770.2

**DIP Facility Authorization**

3.      Authorization of the DIP Financing and DIP Documents.

(a)      The Debtors are expressly and immediately authorized and empowered to execute and deliver the DIP Documents, to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Documents, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Documents and the creation and perfection of the DIP Liens (as defined below) described in and provided for by this Interim Order and the DIP Documents.   All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Documents.   Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.   No obligation, payment, transfer, or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)      The Debtors are expressly and immediately authorized and empowered to execute and deliver any and all instruments and documents that may be necessary to implement this Interim Order, including, but not limited to, new collateral documents and amendments to the existing collateral documents constituting Prepetition Documents.

4.      Authorization to Borrow.   Until the Maturity Date (as defined below), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents,

18

DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to borrow the amounts described in paragraph 10 herein (collectively, the "Interim Financing"). Any payments to be made under any order (including any "first day" orders) shall be made in accordance with this Interim Order and the Budget.

5.    DIP Obligations.  The DIP Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation any trustee appointed in the Cases, or any cases under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "Successor Cases"). Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by the Debtors to the DIP Secured Parties, under the respective DIP Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts under the respective DIP Documents. Notwithstanding anything in this Interim Order to the contrary, nothing in this Interim Order grants superpriority claims or liens with respect to any Prepetition Senior Obligations, other than (i) the Roll-Up Sub–Tranche (as defined below) or (ii) with respect to adequate protection to the extent of any Diminution in Value. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Maturity Date, except as provided in paragraph 11 herein.

6.    DIP Liens and DIP Collateral.  In order to secure the DIP Obligations, effective immediately upon entry of this Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3),

19

and 364(d) of the Bankruptcy Code, the DIP Collateral Agents are hereby granted, for the benefit of themselves and the other DIP Secured Parties, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected postpetition security interests in and liens on (the "DIP Liens") all now owned or hereafter acquired tangible and intangible property of the Debtors and the Debtors' estates in the Cases, including, without limitation, all inventory, accounts receivable, general intangibles, claims and causes of action of the Debtors against all other Persons (including all subsidiaries or affiliates), including, without limitation, all subrogation, reimbursement, contribution, intercompany and other claims, all rights, claims and causes of action arising under sections 502(d), 506(c), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code (the "Avoidance Actions") (with respect to the foregoing liens on Avoidance Actions, subject to entry of the Final Order), the proceeds of Avoidance Actions (with respect to the foregoing liens on the proceeds of Avoidance Actions, subject to entry of the Final Order), deposit accounts, Cash Collateral, letter of credit rights, patents, copyrights, trademarks, tradenames, rights under license agreements, other intellectual property, capital stock of direct subsidiaries of the Debtors, any causes of action pursuant to section 549 of the Bankruptcy Code and proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code to recover any post-petition transfer of collateral, but in all cases excluding the Excluded Bank Accounts (as defined in the DIP Credit Agreement) (collectively, including all proceeds, products, rents, offspring and/or profits of such property, the "DIP Collateral").

7.    DIP Lien Priority. The DIP Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral, subject only to (A) the Carve Out; (B) the Senior Prior Liens; and (C) any other nonconsensual, valid and enforceable lien rights arising under applicable law ("Statutory Liens"), solely to the extent such

708145271.18
NY\6127635.16

Statutory Liens are (i) valid, enforceable, and non-avoidable as of the Petition Date, (ii) timely perfected and (iii) senior to the Prepetition Liens (the "Senior Statutory Liens"). For the avoidance of doubt and without limiting the foregoing, to secure the DIP Obligations, the DIP Agent, for itself and the benefit of the DIP Lenders and other DIP Secured Parties, is hereby granted, subject to the Carve Out (i) a first priority, perfected security interest in, and lien, under section 364(c)(2) of the Bankruptcy Code upon all of the DIP Collateral of each Debtor and of each Debtor's estate that, on or as of the Petition Date, is not subject to valid, perfected, and non-avoidable liens, (ii) a junior lien, under section 364(c)(3) of the Bankruptcy Code upon all of the DIP Collateral of each Debtor and of each Debtor's estate that is, as of the Petition Date, subject only to the Senior Prior Liens (if any) and the Senior Statutory Liens (if any), and (iii) without limiting the scope of clause (i) or (ii) above, a first priority, perfected priming security interest in and lien under section 364(d)(1) of the Bankruptcy Code upon all DIP Collateral that also constitutes Prepetition Collateral, in all cases senior to (A) the Prepetition Liens and (B) all other liens and obligations secured by the Prepetition Collateral on a *pari passu* or junior basis to the Prepetition Liens (collectively the "Prepetition Primed Obligations"). The DIP Liens shall have the same priority as the Prepetition Liens as against the liens of any third party, provided, however, that the Prepetition Liens, which shall be subordinate to the DIP Liens in all respects, shall remain in existence with respect to any portion of the Prepetition Senior Obligations that are outstanding. Other than as set forth herein or in the DIP Documents, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, upon the conversion of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of the Cases or Successor Cases. The DIP

21

Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code. Subject to entry of the Final Order, the DIP Liens shall not be subject to section 506(c) or the "equities of the case" exception of section 552(b) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

8.     DIP Superpriority Claim.   Upon entry of this Interim Order, the DIP Secured Parties are hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim against each Debtor, on a joint and several basis, in the Cases and any Successor Cases (collectively, the "DIP Superpriority Claim") for all DIP Obligations. The DIP Superpriority Claim shall be subordinate only to the payment in full in cash of the Carve Out and shall otherwise (A) have priority over any and all administrative expense claims and unsecured claims against the Debtors or their estates in the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114, and any other provision of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code; (B) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; (C) not be subject to discharge under section 1141 of the Bankruptcy Code; and (D) be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds, products, rents, offspring and/or profits thereof.

9.     No Obligation to Extend Credit.   The DIP Agent and DIP Lenders shall have no obligation to make any loan or advance under the DIP Documents, unless all of the conditions

22

precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the Required DIP Lenders in their sole discretion.

        10.    <u>Use of DIP Facility Proceeds; Roll-Up of Prepetition Senior Obligations</u>. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order, the DIP Documents and, subject to permitted variances, in compliance with the Budget, a copy of which is attached to this Interim Order as <u>Exhibit 1</u>.

        (a)    Upon the date that all of the conditions precedent contained in the DIP Documents to the initial availability of the DIP Facility are satisfied or waived by the Required DIP Lenders (or by the DIP Agent on behalf of the Required DIP Lenders) (the "<u>Initial Availability Date</u>"):

        (i)    amounts under the DIP Facility will be made available up to $15,000,000 in aggregate principal amount (the "<u>Interim New Money Portion</u>") for uses consistent with and in accordance with the Budget (subject to permitted variances) (including amounts required to be paid with respect to the DIP Facility, including an amount necessary to pay the fees and expenses of the Prepetition Agent, the Prepetition Secured Creditors (solely to the extent owing pursuant to the Prepetition Documents), the DIP Agent and/or the DIP Collateral Agents (including reasonable prepetition and postpetition fees and expenses of their respective professionals), which payment of prepetition and postpetition fees and expenses the Debtors are hereby authorized to make within seven (7) Business Days (if no written objection from the U.S. Trustee or any Statutory Committee is received within such seven (7) Business Days) after such professional has delivered an invoice to the U.S. Trustee and to counsel to any Statutory Committee. If such objection is received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and the Court

23

shall decide any such objection unless otherwise resolved.  For the avoidance of doubt, none of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court; *provided* that upon entry of a final non-appealable order by the Court determining that any payments on account of Prepetition Senior Obligations described herein were not proper pursuant to section 506(b) of the Bankruptcy Code, such payments may be reapplied or recharacterized as the Court may order); and

        (ii)      each DIP Lender who is also a Prepetition Lender that provides any portion of the Interim New Money Portion shall be entitled to a dollar for dollar redesignation of its Prepetition Senior Obligations as DIP Loans (the "Roll-Up") pursuant to a sub-tranche (the "Roll-Up Sub-Tranche") of the DIP Facility in an aggregate amount equal to its respective Interim New Money Portion (plus an amount equal to all accrued and unpaid interest thereon, including applicable default interest thereon, through the date of such Roll-Up at the rate(s) in effect, including applicable default rates, under the Prepetition Documents owing to each such lender). The Roll-Up is and shall be subject to the reservation of rights of parties in interest (other than the Debtors) set forth in paragraph 34 of this Interim Order, and upon expiration of the Challenge Period (as defined in paragraph 34) or denial by this Court of any timely filed Challenge, the Debtors' re-designation of the Roll-Up Sub-Tranche, including, in addition, the amount re-designated pursuant to paragraph 10(b)(ii) below, shall be deemed to be indefeasible, final and not subject to further challenge.

        (b)      Upon entry of an order by the Court granting final approval of the DIP Facility that is in form and substance acceptable to the DIP Agent and the Required DIP Lenders in their sole and absolute discretion (the "Final Order"), amounts under the DIP Facility will be made

available as follows:

        (i)     additional amounts under the DIP Facility will be made available up to $20,000,000 in aggregate principal amount (the "Final New Money Portion") for uses consistent with and in accordance with the Budget (subject to permitted variances) (including amounts required to be paid with respect to the DIP Facility, including an amount necessary to pay the reasonable fees and expenses of the Prepetition Agent, the Prepetition Secured Creditors (solely to the extent owing pursuant to the Prepetition Documents), the DIP Agent and/or the DIP Collateral Agents (including prepetition and postpetition fees and expenses of their respective professionals), which payment of prepetition and postpetition fees and expenses the Debtors are hereby authorized to make within seven (7) Business Days (if no written objection is received from the U.S. Trustee or any Statutory Committee within such seven (7) Business Days) after such professional has delivered an invoice to the U.S. Trustee and to counsel to any Statutory Committee.  If such objection is received, the Debtors shall promptly pay the portion of such invoice not subject to such objection, and the Court shall decide any such objection unless otherwise resolved.  For the avoidance of doubt, none of such fees, costs and expenses shall be subject to Court approval or U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court); and

        (ii)    each DIP Lender who is also a Prepetition Lender that provides a portion of the Final New Money Portion shall be entitled to the Roll-Up under the Roll-Up Sub-Tranche in an aggregate amount equal to its respective Final New Money Portion (plus accrued and unpaid interest thereon, including applicable default interest thereon, through the date of such Roll-Up at the rate(s) in effect, including applicable default rates, under the Prepetition Credit Agreement owing to each such lender).

25

**Authorization to Use Cash Collateral**

11.    _Authorization to Use Cash Collateral_.  Subject to the terms and conditions of this Interim Order, the DIP Facility and the DIP Documents and in accordance with the Budget (subject to permitted variances), the Debtors are authorized to use Cash Collateral until the occurrence of a Termination Declaration Date (as defined below); _provided, however_, that during the five (5) business day period after a Termination Declaration Date, the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget (subject to permitted variances) solely to meet payroll and related tax and withholding obligations and, as may be agreed to by the Required DIP Lenders in their reasonable discretion, to pay expenses critical to the preservation of the Debtors and their estates.  Subject to the Carve Out, following the expiration of the five (5) business day period after the occurrence of a Termination Declaration Date, the Debtors shall no longer be authorized to use Cash Collateral, unless the DIP Agent shall have rescinded such Termination Declaration.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or the Debtors' use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Facility, the DIP Documents, and in accordance with the Budget (subject to permitted variances).

12.    _Adequate Protection Liens_.

(a)    _Adequate Protection Liens_.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, with respect to any outstanding Prepetition Senior Obligations, as adequate protection of the interests of the Prepetition Agent and Prepetition Secured Creditors in the Prepetition Collateral against and to the extent of any Diminution in Value of such interests in the Prepetition Collateral, the Debtors hereby grant to the Prepetition Agent, for the benefit of itself

26

and the Prepetition Secured Creditors, continuing valid, binding, enforceable and automatically and properly perfected postpetition security interests in and liens on the DIP Collateral (the "Adequate Protection Liens").

(b)     *Priority of Adequate Protection Liens.*

(i)     The Adequate Protection Liens shall be junior only to:  (A) the Carve Out; (B) the Senior Prior Liens, (C) the DIP Liens, and (D) the Senior Statutory Liens.  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(ii)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in the Cases or any Successor Cases, or upon the dismissal of the Cases or Successor Cases.  The Adequate Protection Liens shall not be subject to sections 510, 549 or 550 of the Bankruptcy Code.  Subject to entry of the Final Order, the Adequate Protection Liens shall not be subject to section 506(c) or the "equities of the case" exception of section 552 of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens.

13.     Adequate Protection Superpriority Claim.  As further adequate protection of the interests of the Prepetition Agent and Prepetition Secured Creditors in the Prepetition Collateral against and to the extent of any Diminution in Value of such interests in the Prepetition Collateral, to the extent any Prepetition Senior Obligations are outstanding, the Prepetition Agent, for its benefit and the benefit of the Prepetition Secured Creditors, is hereby granted as and to the extent

27

provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim against each of the Debtors on a joint and several basis in the Cases and any Successor Cases (the "Adequate Protection Claim"). Such Adequate Protection Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds, products, rents, offspring and/or profits thereof.

14. Priority of the Adequate Protection Claim. The Adequate Protection Claim shall be subject to the payment in full in cash of (A) the Carve Out; and (B) the DIP Superpriority Claim. The Adequate Protection Claim (A) shall otherwise have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113 and 1114 of the Bankruptcy Code; (B) shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law; and (C) shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds, products, rents, offspring and/or profits thereof.

15. Funding Collateral Account. TID shall establish an account (the "Funding Collateral Account") held by TID with the DIP Agent or an institution acceptable to the DIP Agent in its sole discretion. Amounts held in the Funding Collateral Account shall be made available to the Debtors from time to time for uses consistent with and in accordance with the Budget (subject to permitted variances) (including amounts required to be paid with respect to the DIP Facility) as set forth in the DIP Credit Agreement. For the avoidance of doubt, on the Initial Availability Date, the Interim New Money Portion will be made available directly to the Debtors for uses consistent

28

with and in accordance with the Budget (subject to permitted variances) (including amounts required to be paid with respect to the DIP Facility) as set forth in the DIP Credit Agreement.

16.     Lender Reserve Account.  TID shall establish an account (the "Lender Reserve Account") held by TID with the DIP Agent or an institution acceptable to the DIP Agent in its sole discretion and subject to the sole dominion of the DIP Agent in order to cash collateralize all amounts held in the Funding Collateral Account and all unfunded commitments of the DIP Lenders.

17.     Section 507(b) Reservation.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Agent and the Prepetition Secured Creditors is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.

**Provisions Common to DIP Financing**
**and Use of Cash Collateral Authorizations**

18.     Amendment of the DIP Documents.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto upon two (2) business days' advance notice to any Statutory Committee appointed in these Cases and the U.S. Trustee, without a hearing, if:  (a) the amendment, modification, or supplement is:  (i) in accordance with the DIP Documents; (ii) beneficial to the Debtors; and (iii) not prejudicial in any material respect to the rights of third parties; (b) a copy (which may be provided by fax or email) of the amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee; and (c) the amendment, modification or supplement is filed with the Court; *provided,* *however,* that consent of any Statutory Committee or the U.S. Trustee, and approval of the Court,

29

are not necessary to effectuate any such amendment, modification or supplement. In the event that an amendment, modification or supplement to the DIP Documents requires notice and a hearing, the Debtors shall provide notice of such hearing to appropriate parties in interest in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any other order of this Court. Except as otherwise provided in this paragraph 18, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed by or on behalf of the Debtors and the DIP Agent (after having obtained the approval of the Required DIP Lenders) and approved by the Court.

19.     Budget Maintenance. The Budget, and any modification to or amendment or update of the Budget, shall be in form and substance acceptable to the Required DIP Lenders in their sole and absolute discretion. The Budget may be amended, modified, or supplemented in writing from time to time only with the written consent of the DIP Agent after having obtained the approval of the Required DIP Lenders in their sole and absolute discretion. The Debtors shall update the Budget from time to time (provided that any update shall be in form and substance acceptable to the Required DIP Lenders in their sole and absolute discretion), in accordance with the DIP Documents. Any such modification of the Budget, other than regular updates, shall be delivered to any Statutory Committee appointed in these Cases with two (2) business days' advance notice and shall be filed with the Court.

20.     Modification of Automatic Stay. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claim, and the Adequate Protection Claim; (b) permit the Debtors to perform such acts as the DIP Agent, the DIP Lenders, or the

30

Prepetition Agent may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, the DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors under the DIP Documents, the DIP Facility and this Interim Order; and (d) authorize the Debtors to pay, and the DIP Agent, the DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors to retain and apply, all payments made in accordance with and subject to the terms of this Interim Order.

21.    <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens, without the necessity of (a) filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or (b) the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, mortgages or deeds of trust) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens or the Adequate Protection Liens, or to entitle the DIP Agent, the DIP Lenders, the Prepetition Agent, and the Prepetition Secured Creditors to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Prepetition Agent each are authorized to file and obtain, as each deems necessary in its sole discretion, such financing statements, mortgages, notices of lien, control agreements and other security documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens and/or the Adequate Protection Liens, as applicable, and all such financing statements, mortgages, notices, control agreements and other security documents shall be deemed to have been filed or recorded as of the Petition Date; *provided, however*, that no such filing or recordation shall be necessary or required in order to

31

create or perfect the DIP Liens and/or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand, and to cause the Non-Debtor Obligors to execute and deliver promptly on demand, to the DIP Agent and the Prepetition Agent all such financing statements, mortgages, notices, control agreements and other security documents as the DIP Agent and the Prepetition Agent each may reasonably request with respect to the DIP Liens and the Adequate Protection Liens, respectively. The DIP Agent and the Prepetition Agent, each in its discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

22.    <u>Proceeds of Subsequent Financing</u>.  If the Debtors, or any trustee, any examiner with enlarged powers, or any responsible officer subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to section 364 of the Bankruptcy Code or in violation of the DIP Documents at any time prior to the indefeasible repayment in full in cash of all DIP Obligations and Prepetition Senior Obligations, the satisfaction of the DIP Superpriority Claims and the Adequate Protection Claims, and the termination of the DIP Agent's and DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and their estates, and such facilities are secured by any DIP Collateral, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, to be applied as set forth in the DIP Documents and this Interim Order.

23.    <u>Maintenance of DIP Collateral</u>.  Until the indefeasible payment in full in cash of all DIP Obligations and all Prepetition Senior Obligations, the satisfaction of the DIP Superpriority Claims, and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit

32

under the DIP Facility, the Debtors shall: (a) insure the DIP Collateral as required under the DIP Facility or the Prepetition Facility, as applicable, and (b) maintain the cash management system in effect as of the Petition Date, as modified (i) by any order that may be entered by the Court which has first been agreed to by the Required DIP Lenders or (ii) as otherwise required by the DIP Documents.

24.     Disposition of DIP Collateral.

(a)     Except as otherwise provided for herein or in the DIP Documents, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral without the prior written consent of the Required DIP Lenders, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, the DIP Lenders.

(b)     In the event of any sale, lease or other disposition of any DIP Collateral (a "Collateral Disposition"), the Debtors shall, to the extent required by the DIP Documents, and subject to the Carve Out, pay, or cause to be paid to, the DIP Agent the proceeds of such Collateral Disposition for application in accordance with the DIP Documents and this Interim Order. All such proceeds of any Collateral Disposition shall be applied in accordance with the terms and conditions of the DIP Documents and this Interim Order.

25.     Maturity Date. Upon the earliest to occur of (such earliest date, the "Maturity Date") (a) the date that is one hundred five (105) days after the Closing Date; (b) the date that is thirty (30) days after entry of this Interim Order if the Final Order has not been entered by such date, (c) the effective date of any plan filed in the Cases that is confirmed pursuant to an order entered by this Court, and (d) the acceleration of the DIP Facility loans and the termination of all remaining commitments of the DIP Lenders thereunder in accordance with the terms of the DIP

33

Documents and this Interim Order, (i) all DIP Obligations shall be immediately due and payable, and all commitments to extend credit under the DIP Facility, will terminate, and (ii) subject to the Carve Out, all authority to use Cash Collateral shall cease, except as set forth in and in accordance with paragraph 11 above.

26.     Events of Default.    The occurrence of an "Event of Default" under the DIP Documents as set forth therein shall constitute an event of default under this Interim Order, unless waived in writing by the Required DIP Lenders, as applicable (the "Events of Default").

27.     Rights and Remedies Upon Event of Default.    Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent, upon the direction of the Required DIP Lenders, may declare (i) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (ii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains, (iii) the termination of the DIP Credit Agreement and any other DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting any of the DIP Liens or the DIP Obligations; and/or (iv) the termination, reduction or restriction on the ability of the Debtors to use any Cash Collateral, except as provided in and in accordance with paragraph 11 herein (any such declaration shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by facsimile (or other electronic means) to counsel to the Debtors, counsel to any Statutory Committee, and the U.S. Trustee (and the earliest date any such Termination Declaration is delivered in accordance with the terms hereof shall be referred to herein as the "Termination Declaration Date"). Any automatic stay otherwise applicable to the DIP Agent, the DIP Secured Parties, the Prepetition Agent, or the Prepetition Secured Creditors is hereby modified so that five (5) business days after the Termination Declaration Date (such

34

period, the "DIP Remedies Notice Period"), (A) the DIP Agent, with the consent of the Required DIP Lenders, shall be entitled to exercise its rights and remedies in accordance with the DIP Documents and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and all DIP Obligations, subject to the Carve Out, and (B) to the extent any Prepetition Senior Obligations are outstanding, the Prepetition Agent (but subject to the rights, remedies and actions taken by the DIP Agent upon the consent of the Required DIP Lenders), shall be entitled to exercise its rights and remedies to satisfy the Prepetition Senior Obligations and the Adequate Protection Claim, subject to the Carve Out and the terms of this Interim Order. During the DIP Remedies Notice Period, the Debtors and/or any Statutory Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred. Unless the Court determines during the DIP Remedies Notice Period that an Event of Default has not occurred, the automatic stay, as to all of the DIP Lenders and the Prepetition Secured Creditors, shall automatically be terminated at the end of the DIP Remedies Notice Period without further notice or order. Upon the expiration of the DIP Remedies Notice Period, the DIP Agent, with the consent of the Required DIP Lenders, and the Prepetition Agent (but subject to the rights, remedies and actions taken by the DIP Agent upon the consent of the Required DIP Lenders) shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Documents, the Prepetition Credit Agreement and the Prepetition Documents, and as otherwise available at law without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interests or any other rights and remedies granted to any of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Creditors pursuant to the DIP Credit Agreement, the DIP Documents, the

35

Prepetition Credit Agreement, the Prepetition Documents or this Interim Order.

28.     Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order. The DIP Agent, DIP Lenders, the Prepetition Agent, and the Prepetition Secured Creditors have acted in good faith in connection with this Interim Order, and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Creditors are entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or any lien, claim or priority authorized or created hereby. Any liens or claims granted to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Creditors hereunder arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

29.     Rights Under Sections 363(k) and 1129(b). The full amount of, or any partial amount of, the DIP Obligations and/or the Prepetition Senior Obligations may be used to "credit bid" for the assets and property of the Debtors as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363 and/or section 1129(b) of the Bankruptcy Code or otherwise.

30.     Proofs of Claim. The DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors will not be required to file proofs of claim in the Cases or Successor

36

Cases for any claim in their capacities as such. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases to the contrary, the Prepetition Agent on behalf of itself and the Prepetition Secured Creditors is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim and/or aggregate proofs of claim in the Cases or Successor Cases for any claim allowed herein. Any proof of claim filed by the Prepetition Agent shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Creditors. Any order entered by the Court in relation to the establishment of a bar date in the Cases or Successor Cases shall not apply to the DIP Secured Parties, the Prepetition Agent and the Prepetition Secured Creditors in their capacities as such.

31.     <u>Rights of Access and Information.</u> Without limiting the rights of access and information afforded the DIP Secured Parties under the DIP Documents, the Debtors shall afford representatives, agents and/or employees of the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Creditors (to the extent any Prepetition Senior Obligations are outstanding) and any Statutory Committee appointed in these Cases reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents and Prepetition Documents, as applicable, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors shall authorize their independent certified public accountants, financial advisors, investment bankers and consultants, if any, to cooperate, consult with, and provide to the DIP Agent, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Creditors (to the extent any Prepetition Senior Obligations are outstanding) and any Statutory Committee appointed in these Cases all such information as may be reasonably requested with respect to the

business, results of operations and financial condition of the Debtors. Notwithstanding anything to

the contrary herein, the Debtors do not waive any right to attorney-client, work product, or similar

privilege, and the Debtors shall not be required to provide any information subject to such

privileges.

32.    Carve Out.

(a)    Carve Out.  As used in this Interim Order, the term "Carve Out" means

collectively the following:

(i) statutory fees payable to the U.S. Trustee or fees payable to the clerk of the
Court pursuant to 28 U.S.C. § 1930;

(ii) to the extent allowed by the Court at any time, all accrued and unpaid fees,
disbursements, costs and expenses (collectively, the "Professional Fees") incurred
by the Case Professionals[5] on or after the Carve Out Declaration Date (as defined
below) in an aggregate amount not to exceed (x) $500,000 with regard to
Professional Fees incurred by the Case Professionals retained by the Debtors and
(y) $100,000 with regard to Professional Fees incurred in the aggregate by the Case
Professionals retained by all Statutory Committees, (the total aggregate amount
described in sub-clauses (x) and (y) herein, the "Carve Out Amount"); *provided*
that in the event a Carve Out Declaration is rescinded by court order or the DIP
Agent, any amounts paid pursuant to this clause (ii) shall not reduce, or be deemed
to reduce, the Carve Out Amount; and

(iii) to the extent allowed by the Court at any time, all accrued and unpaid
Professional Fees incurred by the Case Professionals at any time before the Carve
Out Declaration Date, whether such amounts are allowed by the Court prior to or
after such date (and including amounts incurred but not invoiced prior to such date
or the delivery of a Carve Out Declaration), in an aggregate amount not to exceed
the amount set forth in the Carve-Out Budget attached hereto as Exhibit 2 through
such date for all Case Professionals; *provided* that, for the avoidance of doubt, the
portion of the Carve Out allocated to each Case Professional pursuant to this clause
(iii) shall be limited to the aggregate amount set forth in the Carve-Out Budget
through such date for such applicable Case Professional; *provided* that such
Professional Fees and the payment thereof shall not reduce, or be deemed to reduce,

---

[5]    As used herein, the term "**Case Professionals**" means any and all professionals or
professional firms retained under final order of the Court by the Debtors or any Statutory
Committee pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, in each case other
than ordinary course professionals.

708145271.18
NY\6127635.16

01:14961770.2

the Carve Out Amount.

(b)      So long as a Carve Out Declaration Date has not occurred in accordance with this Interim Order, the Debtors shall be permitted to pay Professional Fees, as the same may be due and payable (including on an interim basis) under sections 330 and 331 of the Bankruptcy Code and in accordance with the Budget, and the same shall not reduce, or be deemed to reduce, the Carve Out.  Any payment or reimbursement made on or after the occurrence of a Carve Out Declaration Date in respect of any Professional Fees (exclusive of the application of any retainers by any of the Case Professionals) shall permanently reduce the Carve Out Amount on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise be entitled to the protections granted under this Interim Order, the DIP Documents, the Bankruptcy Code and applicable law. As used herein, (i) the term "Carve Out Declaration" means a written notice provided by the DIP Agent, at the direction of the Required DIP Lenders, to the Debtors, the U.S. Trustee and any Statutory Committee that the Carve Out is invoked, which notice can be delivered only when the DIP Agent is entitled to exercise remedies under the DIP Facility due to the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and has terminated the Debtors' use of Cash Collateral, and (ii) the term "Carve Out Declaration Date" means the date on which the Carve Out Declaration is delivered in accordance with clause (i) above.

(c)      Upon receipt of a Carve Out Declaration, the Debtors shall immediately fund, or cause to be funded, into a segregated account established by the Debtors (the "Carve Out Account") an amount of cash equal to the Carve Out.  All amounts deposited into the Carve Out Account shall continue to be subject to the DIP Liens, the Prepetition Liens and the Adequate Protection Liens such that, upon final payment of all amounts due and owing under the Carve Out,

39

any funds remaining in the Carve Out Account shall be remitted to the DIP Secured Parties or the Prepetition Secured Creditors, as applicable. The Carve Out Account shall be a segregated account at a financial institution acceptable to the Prepetition Agent and the DIP Agent. The Debtors shall not commingle any funds contained in the Carve Out Account and shall use such funds to pay only the Professional Fees, as and when allowed by order of this Court, with any remaining funds in the Carve Out Account being remitted to the DIP Secured Parties or the Prepetition Secured Creditors, as applicable.

(d)    Priority of Carve Out.  Notwithstanding anything to the contrary contained in this Interim Order or in any DIP Documents, the liens and claims granted to any of the DIP Secured Parties or the Prepetition Secured Creditors (including, without limitation, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Claims, the Prepetition Senior Obligations, and the Prepetition Liens) under, pursuant to, or in connection with this Interim Order, the DIP Facility, any DIP Document, or any Prepetition Document shall be subject to the payment in full in cash of the amounts due under the Carve Out.

(e)    No Direct Obligation to Pay Professional Fees.  The DIP Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with the Cases or any Successor Cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed (i) to obligate the DIP Secured Parties, in any way to directly pay compensation to or to directly reimburse expenses of any Case Professional; (ii) to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (iii) to increase the Carve Out if actual Professional Fees incurred after occurrence of a Carve Out Declaration Date exceeds the Carve Out Amount; (iv) as consent to the allowance of any professional fees or expenses of any Case

40

Professionals; or (v) to affect the right of the Prepetition Agent, Prepetition Secured Creditors, DIP Agent or DIP Secured Parties to object to the allowance and payment of any such fees and expenses.

33.    <u>Limitations on the DIP Facility, the DIP Collateral, Cash Collateral and the Carve Out.</u>  The DIP Facility, the DIP Collateral, the Cash Collateral and the Carve Out may not be used in connection with:  (a)  preventing, hindering, or delaying any of the DIP Secured Parties, the Prepetition Agent's or Prepetition Secured Creditors' enforcement or realization upon any of the DIP Collateral or Prepetition Collateral once an Event of Default has occurred;  (b) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral or Prepetition Collateral (unless otherwise permitted hereby) without the consent of the Required DIP Lenders; (c) using or seeking to use any insurance proceeds constituting DIP Collateral or Prepetition Collateral without the consent of the Required DIP Lenders; (d) incurring any indebtedness that is not provided for in the Budget without the prior consent of the Required DIP Lenders, except to the extent permitted under the DIP Documents; (e) objecting to or challenging in any way any claims or liens on the DIP Collateral (including Cash Collateral) or, as the case may be, the Prepetition Collateral (including Cash Collateral), held by or on behalf of any of the DIP Secured Parties, the Prepetition Agent, or the Prepetition Secured Creditors, respectively; (f) asserting, commencing or prosecuting any claims or causes of action, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against any of the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Creditors, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and/or employees; (g) prosecuting an objection to, or contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the DIP Liens, the Prepetition Senior Obligations, the

41

Prepetition Liens, or any other rights or interests of any of the DIP Secured Parties, the Prepetition Agent, or the Prepetition Secured Creditors; or (h) taking any action which is contrary to any term or condition set forth in the DIP Documents or this Interim Order; *provided, however*, that the Statutory Committees' portion of the Carve Out may be used for allowed fees and expenses, in an amount not to exceed $25,000.00 in the aggregate, incurred solely by the Statutory Committees, if appointed, in investigating the validity, enforceability, perfection or priority of the Prepetition Liens pursuant to paragraph 34.

34.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims. Nothing in this Interim Order or the DIP Documents shall prejudice the rights of any Statutory Committee, if granted standing by the Court, or any other party in interest granted standing by the Court (other than the Debtors), to seek, solely in accordance with the provisions of this paragraph 34, to initiate an adversary proceeding or contested matter asserting to challenge the amount, validity, enforceability, perfection or priority of the Prepetition Senior Obligations or the Prepetition Liens or to otherwise assert any claims or causes of action against the Prepetition Agent or Prepetition Secured Creditors (a "Challenge"). Any Challenge must be asserted no later than the earlier of: (i) the date on which objections to confirmation of a plan of reorganization proposed by the Debtors are due or (ii)(a) if by a Statutory Committee (if granted standing), sixty (60) days after the date of the initial appointment of the Statutory Committee; and (b) if by any other party in interest (if granted standing), seventy-five (75) days after the date of entry of this Interim Order (the "Challenge Period"). The Challenge Period shall not be extended without the written consent of the Required Prepetition Lenders as constituted immediately prior to the Petition Date or by order of the Court for cause shown. Only those parties in interest (including, without limitation, any Statutory Committee) with requisite standing that have timely initiated a

42

Challenge challenging the Prepetition Senior Obligations, the Prepetition Liens, or any liability of the Prepetition Agent or the Prepetition Secured Creditors prior to the expiration of the Challenge Period shall be permitted to participate in the prosecution of such Challenge.  As to (i) any parties in interest, including any Statutory Committee, who fail to file a Challenge within the Challenge Period, or, if any such Challenge is filed and overruled or (ii) any and all matters that are not expressly the subject of a timely Challenge:  (A) any and all Challenges by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Cases), shall be deemed to be forever waived and barred,  (B) all unchallenged matters, findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity of the Prepetition Agent's and each Prepetition Secured Creditor's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, their estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases, and (C) any and all claims or causes of action against the Prepetition Agent and/or the Prepetition Secured Creditors relating in any way to the Debtors shall be released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.  The Challenge procedures provided for herein, however, shall not apply to any action by the holders of Senior Prior Liens or Statutory Liens to seek a determination from the Court regarding the validity or priority of the liens of the holders of their respective Senior Prior Liens or Statutory Liens *vis-a-vis* the liens of the DIP Secured Parties and the Prepetition Secured Creditors.

35.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

43

indirect, or incidental beneficiary.

36.     Section 506(c) Claims.  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in these Cases at any time shall be charged against the DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Creditors, or any of their respective claims, the DIP Collateral, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent, as applicable, of the DIP Secured Parties, Prepetition Agent and/or Prepetition Secured Creditors, and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

37.     No Marshaling/Applications of Proceeds.  The DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Documents and this Interim Order.

38.     Section 552(b).  The Prepetition Agent and Prepetition Secured Creditors shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and, subject to entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Agent or the Prepetition Secured Creditors with respect to proceeds, products, rents, offspring and/or profits of any of the Prepetition Collateral.

39.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver, expressly or implicitly, of the rights of the DIP Secured Parties or the Prepetition Secured Creditors:  (a) to seek any other or supplemental relief in respect of the Debtors; (b) to request modification of the automatic stay

44

of section 362 of the Bankruptcy Code; (c) to request dismissal of the Cases or Successor Cases, conversion of the Cases to a case under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers; (d) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans; or (e) to submit a credit bid in respect of any sale of their respective collateral, whether pursuant to a plan or otherwise.

40. <u>No Waiver by Failure to Seek Relief.</u> The failure of the DIP Secured Parties, the Prepetition Agent or the Prepetition Secured Creditors to seek relief or otherwise exercise their rights and remedies under this Interim Order, the DIP Documents, the Prepetition Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Secured Parties, the Prepetition Agent, and/or the Prepetition Secured Creditors.

41. <u>Binding Effect of Interim Order.</u> Immediately upon execution by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Secured Parties, the Prepetition Agent, the Prepetition Secured Creditors, all other creditors of the Debtors, any Statutory Committee or any other court appointed committee in these Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in these Cases, any Successor Cases, or upon dismissal of the Cases or Successor Cases. In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Secured Parties shall not be deemed to be in control of the operations of or participating in the management of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms or any similar terms are used in the United States Comprehensive

45

Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

42.    <u>No Modification of Interim Order.</u>  Until and unless the DIP Obligations, the Prepetition Senior Obligations and the Adequate Protection Claims have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such payment by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the Required DIP Lenders, (i) any modification, stay, vacatur or amendment of this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 506(c) (subject to entry of the Final Order), 507(a) or 507(b) of the Bankruptcy Code) in the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Claims, other than the Carve Out; (b) without prior written consent of the Required DIP Lenders, any order allowing use of Cash Collateral resulting from DIP Collateral or Prepetition Collateral; or (c) without the prior written consent of the Required DIP Lenders, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens, except as specifically provided herein or in the DIP Documents. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the Required DIP Lenders, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Secured Parties or Prepetition Secured Creditors.

43.    <u>Interim Order Controls.</u>  In the event of any inconsistency between the terms and

46

conditions of the DIP Documents and of this Interim Order, the provisions of this Interim Order shall govern and control.

44.    <u>Survival</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:    (a) confirming any plan of reorganization in these Cases; (b) converting the Cases to cases under Chapter 7 of the Bankruptcy Code; (c) dismissing the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Cases or Successor Cases.    The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Secured Parties, the Prepetition Agent, and the Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of, or abstention in respect of, the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until:    (i) in respect of the DIP Facility, all the DIP Obligations, including, without limitation, the DIP Superpriority Claim, pursuant to the DIP Documents and this Interim Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such payment by their terms), and all commitments to extend credit under the DIP Facility are terminated and (ii) in respect of the Prepetition Facility, all of the Prepetition Senior Obligations pursuant to the Prepetition Documents and this Interim Order, including, without limitation, the Adequate Protection Claim, have been indefeasibly paid in full in cash.    The protections, claims, liens and rights afforded the DIP Secured Parties in the DIP Documents shall continue in the Cases, in any Successor Cases, following dismissal of, or abstention in respect of, the Cases or any Successor Cases, following termination of the DIP Documents and DIP Facility and/or the indefeasible repayment of the DIP

47

Obligations as set forth in the DIP Documents.  In addition, the terms and provisions of this Interim Order shall continue in full force and effect for the benefit of the Prepetition Agent and Prepetition Secured Creditors notwithstanding the repayment in full of or termination of the Prepetition Senior Obligations.

45.    Final Hearing.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for March 3, 2014, at 1:00 p.m. (Prevailing Eastern Time) before the Honorable Kevin Gross, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware.  Upon entry of this Order, within forty-eight (48) hours thereafter, the Debtors shall serve notice of such entry on the Initial Notice Parties and all parties that have filed prior to such service date requests for notice pursuant to Bankruptcy Rule 2002.  The notice shall provide that any objections to the relief granted in this Order must be filed with the Court and served upon counsel for the Debtors no later than seven (7) days prior to the Final Hearing to be held on the DIP Motion (the "Objection Deadline").  Any objection to the entry of a final order granting the relief requested in the DIP Motion shall be filed with the Court and served on (a) Tuscany International Holdings (U.S.A.) Ltd., 1950, 140 — 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3 (Attn: Deryck Helkaa), (b) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: Annemarie V. Reilly), (c) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801 (Attn: Michael R. Nestor), (d) Mayer Brown LLP, 1675 Broadway, New York, New York 10019 (Attn: Howard S. Beltzer); (e) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Mark D. Collins), (f) counsel to the official committee of unsecured creditors, if one is appointed, and (g) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Tiiara Patton),

48

no later than 5:00 p.m. (Prevailing Eastern Time) on the date of the Objection Deadline. If an objection is timely filed and served prior to the Objection Deadline, such objection shall be heard at the Final Hearing on the DIP Motion.

46.    *Nunc Pro Tunc* Effect of this Interim Order. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

47.    Retention of Jurisdiction. The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: FEB. 4 , 2014
         Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

49

708145271.18
NY\6127635.16

01:14961770.2