## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| TUSCANY INTERNATIONAL HOLDINGS (U.S.A.) LTD., <u>et al</u>.,[1] | Case No.  14-10193 (KG) <br> (Jointly Administered) |
| | <u>Objection Deadline</u>:  May 12, 2014 at 4:00 pm, extended by agreement for the United States Trustee to May 14, 2014 |
| | <u>Hearing Date</u>:  May 19, 2014 at 11:00 am |
| Debtors. | Re:  Docket Nos. 266 and 267 |

### OBJECTION OF THE UNITED STATES TRUSTEE TO CONFIRMATION OF THE JOINT PLAN OF REORGANIZATION FOR TUSCANY INTERNATIONAL DRILLING INC. AND ITS AFFILIATE DEBTOR UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Roberta A. DeAngelis, the United States Trustee for Region 3 ("<u>United States Trustee</u>"), by and through her undersigned attorney, hereby files this objection ("<u>Objection</u>") to Confirmation of the Debtors' Joint Plan of Reorganization for Tuscany International Drilling Inc. and its Affiliate Debtor under Chapter 11 of the Bankruptcy Code (Docket No. 266) (the "<u>Plan</u>") In support of the Objection, the United States Trustee respectfully states:

### Preliminary Statement

1.      A chapter 11 plan may not be confirmed unless the Court can find the plan complies with the provisions of 11 U.S.C. § 1129(a).  A plan proponent bears the burden of proof with respect to each and every element of section 1129(a).  *See  In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 599 (Bankr. D. Del. 2001).  As discussed below, the Plan is not confirmable in the following respects:  (i) overly broad Debtor Releases; (ii) impermissibly

---

[1]      The Debtors in these cases are Tuscany International Holdings (U.S.A.) Ltd. and Tuscany International Drilling Inc. The last four digits of Tuscany International Holdings (U.S.A.) Ltd.'s U.S. federal tax identification number are 8192. The last four digits of Tuscany International Drilling Inc.'s Canadian tax identification number are 4278. The address for the Debtors is 1950, 140 – 4 Avenue S.W. Calgary, Alberta, Canada T2P 3N3.

broad Exculpation Clause;   (iii) non-consensual Third-Party Releases; and (iv) insufficient information and disclosure: (a) regarding the identification of NewCo's officers and directors, (b) the terms of the NewCo Incentive Plan,[2] (c) the material terms of the Debtors' proposed Exit Facility, including the notes, exhibits and schedules referenced therein, (d) the identification of the limited partners and their related capital contribution in Tuscany Holdings GP, LLC, and (e) the contribution of the purported members of Tuscany Holdings GP.

2.      For these reasons, as detailed below, the United States Trustee respectfully requests that confirmation of the Debtors' Plan be denied.

## Jurisdiction

3.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

4.      Under 28 U.S.C. § 586, the United States Trustee is generally charged with monitoring the federal bankruptcy system. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that United States Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

5.      Under section 307 of title 11 of the United States Code (the "Bankruptcy Code"), the United States Trustee has standing to be heard on the Plan and the issues raised in this Objection.

---

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Disclosure Statement and the Plan.

**Background**

6.    On February 2, 2014 (the "Petition Date"), Tuscany International Holdings (U.S.A.) LTD and Tuscany International Drilling Inc. (collectively, the "Debtors") filed voluntary petitions for relief under the Bankruptcy Code.

7.    The Debtors continue to operate their business and manage their properties as debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code

8.    On March 13, 2014, the United States Trustee appointed the Committee of Equity Security Holders (the "Committee") pursuant to section 1102(a) of the Bankruptcy Code. Docket No. 151.

9.    By order entered on April 9, 2014, this Court approved the Debtors' Disclosure Statement for the Joint Plan of Reorganization for Tuscany International Drilling Inc. and its Affiliate Debtor under Chapter 11 of the Bankruptcy Code. *See* Docket Nos. 263 (Order), and 267 (the "Disclosure Statement").

10.    On May 2, 2014, the Debtors filed their Plan Supplement, which included draft documents regarding the Organizational Documents of Reorganized Holdco, Organizational Documents of NewCo, NewCo Incentive Plan, NewCo Ownership Agreement and the Debtors' proposed exit financing.

***Release and Exculpation Provisions in the Plan***

11.    The Plan includes broad releases by the Debtors and their estates (the "Debtor Releases"), and third-parties (the "Third-Party Releases"), as well as an exculpation provision (the "Exculpation Clause").

12.     Section X(B)(1) of the Plan provides releases by the Debtors and their Estates of any "Released Party," which is defined to include (a) the Debtors, (b) the Reorganized Debtors, (c) the Committee, (d) the Prepetition Agent, (e) the Releasing Prepetition Lenders, (f) the DIP Facility Agent, (g) the DIP Facility Lenders, (h) the Distribution Agent, (i) the Plan Administrator, and (j) New Co; and in each case the respective "Related Person" of each of the foregoing entities.  *See* Plan, Article I(B).  "Related Persons" in turn includes numerous non-Debtors, including but not limited to, the Released Parties affiliates and subsidiaries, current and former officers, directors, principals, employees, principals, managed accounts or funds, management companies, fund advisors, advisory board members, attorneys and other professionals.  *Id.*

13.     Article X(B)(2) of the Plan sets forth Third-Party Releases.  As with the Debtor Releases, the Third-Party Releases are in favor the "Released Parties," which includes all "Related Persons."  The Plan provides that only Non-Debtor Releasing Party[3] and each Holder of a Claim against any Debtor who (i) fails to affirmatively opt-out of the Third-Party Releases on their respective ballot; or (ii) fails to provide "other opt-out notice in each case in accordance with the procedures set forth herein."  *See* Plan, Article X(B)(2).

14.     Article X(E) of the Plan sets forth the Exculpation Clause that covers not just fiduciaries of the Debtors' estates, but also the following other parties:  (a) the Debtors, (b) the Reorganized Debtors, (c) the Committee, (d) the Prepetition Agent, (e) the Releasing Prepetition Lenders, (f) the DIP Facility Agent, (g) the DIP Facility Lenders, (h) the Distribution Agent, (i) the Plan Administrator [who has not begun to serve], and (j) New Co.; and each of the

---

[3]     The term "Non-Debtor Releasing Party" includes (a) the Committee and the members thereof in their capacity as such, (b) the Prepetition Agent, (c) the Releasing Prepetition Lender, (d) the DIP Facility Agent, (e) the DIP Facility Lenders, and (f) NewCo.  *See* Plan, Article I(B).

foregoing entities affiliates and subsidiaries, current and former officers, directors, principals, employees, principals, managed accounts or funds, management companies, fund advisors, advisory board members, attorneys and other professionals.  The Exculpation Clause covers not just post-petition activity, but also pre-petition activity by parties to receive the exculpation.

*The Plan Supplement*

        15.    Article I(B) of the Plan defines Plan Supplement as "the compilation of documents and forms of documents, and all exhibits, attachments, schedules agreements documents and instruments referred to therein, ancillary or otherwise, including without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, *and are an integral part of,* this Plan, as all the same may be amended, supplemented or modified from time to time. . . The Plan Supplement shall be filed with the Court at least ten (10) days prior to the Voting Deadline."

        16.    The Plan Supplement does not provide sufficient information, as required by 11 U.S.C. § 1129(a), regarding:  (a) the identification of NewCo's officers and directors, (b) the terms of the NewCo Incentive Plan, (c) the material terms of the Debtors' proposed Exit Facility, including the notes and exhibits referenced therein, (d) the identification of the limited partners and their related capital contribution in Tuscany Holdings GP, LLC, and (e) the contribution of the purported members of Tuscany Holdings GP.

*Other Objectionable Provisions of the Plan*

        17.    Articles III(C) and X(G) fail to preserve a creditors right to assert a right of setoff or recoupment as required by  *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J .V.,* 209 F.3d 252 (3d Cir. 2000).  Where applicable in the Plan, the Debtors should be required to add language providing notwithstanding any provision to the contrary in the Plan, nothing shall

bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other application provision of the Bankruptcy Code.

18.     Article XII(S) appears to be an attempt by the Debtors to alter the notice requirements outlined in the Bankruptcy Code and rules, without any explanation or lgal justification for the requested relief.

## Objection[4]

**The Debtor Releases, Third-Party
Releases, and Exculpation Clause
are Impermissible Under
Applicable Law**

19.     There are numerous ways in which the Debtor Releases, Third-Party Releases, and Exculpation Clause set forth in the Plan are contrary to the standards set forth in *In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011), *In re Tribune Company,* 464 B.R. 126 (Bankr. D. Del. 2011), and other applicable case law in this District, as detailed below.

**Releases by the Debtors
and their Estates are Overbroad**

20.     Article X(B)(1) Plan includes broad releases by the Debtors and their Estates of many parties, including but not limited to, (a) the Debtors, (b) the Reorganized Debtors, (c) the Committee, (d) the Prepetition Agent, (e) the Releasing Prepetition Lenders, (f) the DIP Facility Agent, (g) the DIP Facility Lenders, (h) the Distribution Agent, (i) the Plan Administrator [who has not begun to serve], and (j) New Co.; and each of the foregoing entities affiliates and subsidiaries, current and former officers, directors, principals, employees,

---

[4]     In advance of the filing of this Objection, the Debtors provided counsel for the United States Trustee with a copy of their proposed settlement term sheet with the Committee, which includes certain proposed amendments to the Plan.  In advance of her current objection deadline and the currently scheduled confirmation hearing, the United States Trustee did not have a meaningful opportunity to review the proposed settlement term sheet to determine whether it resolves any of her objections to the Plan. Therefore, this Objection only includes the United States Trustee's objection to the Plan.

principals, managed accounts or funds, management companies, fund advisors, advisory board members, attorneys and other professionals.

      21.     Pursuant to the *Washington Mutual* decision and *Tribune* decision*,* among others, the five factors set forth in *In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered when determining whether, notwithstanding section 524(e) of the Bankruptcy Code, a plan may provide for releases by debtors of non-debtor entities.  *See Washington Mutual*, 442 B.R. at 346; *Tribune* 464 B.R. at 186; *In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004).  The *Zenith* factors include the following:

     i.     identity of interests between debtor and non-debtor release, so that a suit against a non-debtor will deplete the estate's resources (e.g. due to debtor's indemnification of non-debtor);

     ii.     substantial contribution to the plan by non-debtor;

     iii.     necessity of release to the reorganization;

     iv.     overwhelming acceptance of plan and release by creditors; and

     v.     payment of all or substantially all of the claims of the creditors and interest holders under the plan.

*Washington Mutual*, 442 B.R. at 346 (citing *Zenith*, 241 B.R. at 110) (citing *Master Mortgage*, 168 B.R. at 937)).  *See also Tribune*, 464 B.R. at 186 (citing *Zenith* for the same five factors to be considered with respect to debtor releases of non-debtor parties).  The factors are neither exclusive nor conjunctive requirements, but simply provide guidance in the Court's determination of fairness.  *Tribune* 464 B.R. at 186, citing *Washington Mutual*, 442 B.R. at 346. Neither the Debtors' Disclosure Statement nor the Plan indicate what, if any, "substantial contribution" is being made by the parties the Debtors are releasing.

22.    The Debtor Releases in the present case include a release of the Debtors' affiliates and subsidiaries, current and former officers, directors, principals, employees, principals, managed accounts or funds, management companies, fund advisors, advisory board members, attorneys and other professionals.    *See* Plan, Articles I(B) and X(B)(1).    In *Washington Mutual*, the Court found impermissible certain releases given to a number of groups that are also to be released by the Debtors in the Plan in the present case.    There, the Court determined that the release of the debtors' directors, officers and professionals were not justified. *Washington Mutual*, 442 B.R. at 349-50, 354.    Although the Court determined that the first of the *Zenith/Master Mortgage* factors may have been met (identity of interests), the other four factors were not. *Id*.    The Court commented that, with respect to their post-petition activities, the directors, officers and professionals of the debtors and the committee were receiving exculpations, which were sufficient, and releases were "unnecessary, duplicative and exceed the limits of what they are entitled to received."  442 B.R. at 350.  The same is true here.

23.    Regarding the release of a liquidating trustee, the *Washington Mutual* Court note that the liquidating trust and its trustee have not done anything yet for which they need a release, and impossible to determine how the liquating trust and its trustee will prospectively make a substantial contribution to the Plan, or that their actions will result in a substantial recovery for creditors or equity holders.  So a release of the trust and the trustee was not appropriate.  *Washington Mutual*,  at 348.  The same is true in the Debtors' cases regarding the proposed release of the Plan Administrator.

24.    The *Washington Mutual* court did not allow third-party releases of affiliates, stating that there is no evidence of who the affiliates are or why they should get a discharge without filing their own bankruptcy cases.  *See  Washington Mutual*, at 354.  The

Debtor Releases in this Plan provide for the releases of the Debtors' non-debtor affiliates and subsidiaries, which pursuant to applicable law is impermissible and should be denied and stricken from the Debtors' Plan.

25.    In *Washington Mutual*, the Court also rejected the debtors' release of the unsecured creditors committee and its members, determining that, under *Zenith/Master Mortgage* factors, they do not qualify for a release from the debtors, although a limited exculpation would be acceptable.  442 B.R. at 348.  The same is true here as it relates to the Committee.

26.    Also, there is no indication in the Disclosure Statement or the Plan that the proposed Released Parties or any of the Related Persons contributed any consideration to the Plan, or otherwise made any contribution to the Plan.

27.    Further, the Debtor Releases include the Reorganized Debtors and all Related Persons of the Reorganized Debtor, to the extent the Debtor Releases are intended to act as a release of future actions, or to release persons or entities employed in the future by the Reorganized Debtors, it should not be allowed.  *See Washington Mutual*, 442 B.R. at 348 (rejecting the release of the liquidating trustee because, *inter alia*, the trustee has not yet taken any action for which he needed a release).

28.    The Debtors have the burden to establish whether the *Zenith/Master Mortgage* factors have been met as to each of the Released Parties and all of the Related Persons who are the beneficiaries of the Debtor Releases.  Because an evidentiary predicate is necessary to approve the Debtor Releases, the United States Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

***Nonconsensual***
***Third-Party Releases are Impermissible***

29.    Article X(B)(2) of the Plan sets forth the Third-Party Releases.  As was the case with the Debtor Releases, the Third-Party Releases are in favor of the "Released Parties" and all "Related Persons."  The Plan provides that Third-Party Releases in the Plan will be given by each Holder of a Claim against any Debtor that (i) fails to affirmatively opt-out of the Third-Party Releases on their respective ballot, or (ii) fails to provide "other opt-out notice in each case in accordance with the procedures set forth herein."  *See* Plan Article X(B)(2).  Based on the foregoing, the proposed Third-Party Releases may be applicable to a Holder of a Claim against any Debtor who was not entitled to vote on the Plan, or was not provided with a formal option to opt-out of the Third-Party Releases, which would render the releases nonconsensual.

30.    Some Courts in this District have determined that third-party releases of non-debtors should be allowed only if they are consensual. *See In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011), *citing, inter alia, In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999) (release provision had to be modified to permit third parties' release of non-debtors only for those creditors who voted in favor of the plan); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan).

31.    In *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203 (3d Cir. 2000), the Third Circuit surveyed cases from various circuits as to when, if ever, a

non-consensual third party release is permissible. The Court acknowledged that a number of Circuits do not allow such non-consensual releases under any circumstances. *See id.* at 212. Other Circuits, the Court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases," such as mass tort cases. *See id.* at 212, *citing Securities and Exchange Commission v. Drexel Burnham Lambert Group, Inc. ( In re Drexel Burnham Lambert Group, Inc.)*, 960 F.2d 285, 293 (2d Cir. 1992); *Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 640, 649 (2d Cir. 1988). *See also*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (third party release may be granted "only in rare cases").

32.    The Third Circuit in *Continental Airlines* ultimately determined that the proposed releases in that case, which enjoined shareholder lawsuits against debtors' directors and officers, did "not pass muster under even the most flexible test for the validity of non-debtor releases." *Continental*, 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id.* at 214, n.11. However, the Court did describe the "hallmarks of permissible non-consensual releases" to be "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Id.* at 214.

33.    In *In re Genesis Health Ventures,* Inc., 266 B.R. 591, 608 (Bankr. D. Del. 2001), the Court evaluated whether a non-consensual release fit the "hallmarks" discussed in *Continental Airlines*, by considering whether: (i) the non-consensual release was necessary to the success of the reorganization, (ii) the releasees have provided a critical financial contribution to the debtor's plan, (iii) the releasees' financial contribution is necessary to make the plan feasible, and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting

11

creditors received reasonable compensation in exchange for the release. *Id*. at 607-08. *See also In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del 2010) (applying same factors).

34.     In the present cases, there is nothing in the record to indicate that the high threshold necessary for approval of non-consensual third-party releases has been met. There is nothing in the record indicating how the four factors set forth in *Genesis* are met with respect to any of the "Released Parties" or "Related Persons" that would be the recipients of these non-consensual releases. It is hard to imagine what "critical financial contribution" to the Debtors' Plan was given by any of the "Released Parties" or "Related Persons."

35.     The Courts in both *Continental* and *Genesis* found that the directors and the officers of the debtors in those cases did not satisfy the requirements to be entitled to a nonconsensual third-party release. *See Continental,* 203 F.3d at 215 ("[W]e have found no evidence that the non-debtor D&Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability"); *Genesis*, 266 B.R. at 606–07 ("[T]he officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of 'assets' to the reorganization.").

36.     The Debtors here should not be allowed the unfettered discretion to force creditors to discharge non-debtors from liability, because a permanent injunction limiting the liability of non-debtor parties is a rare thing that should not be considered absent a showing of exceptional circumstances. *See Continental*, 203 F.3d at 213, n. 9, and cases cited therein.

37.     There are certain non-debtors that will be released by way of the Third-Party Releases that are not entitled to such a release from even those creditors and interest holders that vote to accept the plan and did not opt-out of the third-party release. The Court in

*Washington Mutual* disallowed even consensual third-party releases in favor of four categories of non-debtor entities who will be the beneficiaries of consensual and non-consensual Third-Party Releases in these cases: the Debtors' directors and officers, the Debtors' non-debtor affiliates and subsidiaries, the Committee and the Plan Administrator.

38.    In addressing third party release of the debtors' officers and debtors in *Washington Mutual*, the court held as follows:

> [T]here is no basis for granting third party releases of the Debtors' officers and directors, even if limited to post-petition activity. The only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan. Those activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated); they are in sufficient to warrant such broad releases of any claims third parties may have against them.

442 B.R. at 354. The same is true here.

39.    In addition, the *Washington Mutual* court did not allow third-party releases of affiliates, stating that there is no evidence of who the affiliates are or why they should get a discharge without filing their own bankruptcy cases. *See Washington Mutual*, at 354. The Third-Party Releases in this Plan provide for the releases of the Debtors' non-debtor affiliates and subsidiaries, which pursuant to applicable law is impermissible and should be denied and stricken from the Debtors' Plan.

40.    Under *Washington Mutual,* the Third-Party Releases in the present case should not extend to the Debtors' directors and officers, the Debtors' affiliates or subsidiaries, or any other non-debtor person or entity that did not make a substantial contribution to the Plan, or otherwise provide consideration for their release.

41.    The release of the creditors committee and its members was also disallowed by the Court in *Washington Mutual*. Rather than getting a release, the Court

indicated that the committee and its members could receive exculpation with respect to role they played in bankruptcy process, as long as there was an exception for willful misconduct or gross negligence.  *Id.* Here, the Committee and its members are included in the exculpation clause in Article X(E) of the Plan; they do not need, and should not receive, a release as well.

42.     Thus, even with respect to those creditors who voted to accept the Plan and did not opt-out of the Third-Party Releases, their releases should not extend to the Debtors' directors and officers, the Debtors' subsidiaries or affiliates, or Committee and its members, for the reasons set forth in *Washington Mutual*.

43.     The Debtors have the burden of justifying the validity of the Third-Party Releases, whether consensual or non-consensual, for each and every party to be released. Because an evidentiary predicate is necessary to approve the Third-Party Releases, the United States Trustee reserves argument on this issue until the record at the confirmation hearing is closed.

### The Exculpation Clause
### Is Overly Broad

44.     Article X(E) of the Plan provides exculpation in favor of the "Exculpated Parties."   The term "Exculpated Parties" is defined to include: (a) the Debtors, (b) the Reorganized Debtors, (c) the Committee, (d) the Prepetition Agent, (e) the Releasing Prepetition Lenders, (f) the DIP Facility Agent, (g) the DIP Facility Lenders, (h) the Distribution Agent, (i) the Plan Administrator [who has not begun to serve], and (j) New Co.; and each of the foregoing entities affiliates and subsidiaries, current and former officers, directors, principals, employees, principals, managed accounts or funds, management companies, fund advisors, advisory board members, attorneys and other professionals.  *See* Plan, Articles I(B) and X(E).  The Exculpation

14

Clause covers not just post-petition activity, but also pre-petition activity by parties to receive the exculpation.

45.    As stated by the Court in *Washington Mutual,* an "exculpation clause must be limited to the *fiduciaries* who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers." *Washington Mutual,* 442 B.R. at 350-51 (emphasis added); *accord Tribune*, 464 B.R. at 189 (holding that exculpation clause "must exclude non-fiduciaries"); *see also In re PWS Holding Corp.*, 228 F.3d 224, 246 (3d Cir. 2000) (the creditors' committee, its members and estate professionals may be exculpated under a plan for their actions in the bankruptcy case, except for willful misconduct or gross negligence). The exculpation also must be limited to postpetition activities of such fiduciaries in the bankruptcy case. *Washington Mutual,* 442 B.R. at 350, *citing PWS*, 228 F.3d at 246.

46.    The Exculpation Clause in the Plan includes many parties other than estate fiduciaries, and is not limited to the post-petition activities of the Exculpated Parties. As such, it does not meet the requirements for an exculpation clause outlined in *Washington Mutual* and *PWS*.

***Plan Supplement***

47.    Article I(B) of the Plan defines Plan Supplement as "the compilation of documents and forms of documents, and all exhibits, attachments, schedules agreements documents and instruments referred to therein, ancillary or otherwise, including without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all the same may be amended, supplemented or modified from time to time. . . The Plan Supplement shall be filed with the Court at least ten (10) days

15

prior to the Voting Deadline."  The Plan Supplement does not provide sufficient information regarding:  (a) the identification of NewCo's officers and directors, (b) the terms of the NewCo Incentive Plan, (c) the material terms of the Debtors' proposed Exit Facility, including the notes, exhibits and schedules referenced therein, (d) the identification of the limited partners and their related capital contribution in Tuscany Holdings GP, LLC, and (e) the contribution of the purported members of Tuscany Holdings GP.  The exhibits and schedules contained in the Debtors' Plan Supplement fail to provide information required by section 1129(a) of the Bankruptcy Code, which renders the Plan is not confirmable.

### Conclusion

48.      As detailed above, the Debtors' Plan is not confirmable because it contains release and exculpation provisions that are contrary to applicable law in this District.  The Plan is also not confirmable because it does not comply with 11 U.S.C. § 1129(a), due to the Debtors' failure to provide sufficient information in their Plan Supplement.

49.      The United States Trustee leaves the Debtors to their burden and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

WHEREFORE, the United States Trustee requests that this Court issue an order denying confirmation of the Plan, and/or granting such other relief as this Court deems appropriate, fair and just.

Dated: May 14, 2014                     Respectfully submitted,
      Wilmington, DE

**ROBERTA A. DeANGELIS**
**UNITED STATES TRUSTEE**

By:  */s/ Tiiara N. A. Patton*      .
     Tiiara N. A. Patton
     Trial Attorney
     United States Department of Justice
     Office of the United States Trustee
     J. Caleb Boggs Federal Building
     844 King Street, Suite 2207, Lockbox 35
     Wilmington, DE 19801
     (302) 573-6491 (Phone)
     (302) 573-6497 (Fax)